hMAX N. TOBIAS, JR., Judge.
This case arises out of a ruling by the Board of Zoning Adjustments of the City of New Orleans (“BZA”) that plaintiffs, Andrew Craig (“Craig”) and Karen Ba-charach (“Bacharach”)(collectively “appellants”), owners of a house at 1539 Fourth Street in New Orleans (“1539 Fourth Street” or “the property”), do not have the right to operate a business of transient vacation rentals at that address.
On 11 August 1998, Craig and Baehar-ach purchased 1539 Fourth Street from George Allison (“Allison”), who had owned the property since 1961. The property is a three-story house consisting of 12 rooms. There are five bedrooms on the second floor, and three bedrooms on the third. While some of the bedrooms have their own bathrooms, others share bathrooms. One of the rooms has a kitchenette. Most of the rooms do not have their own kitchens; the house was originally constructed as a large, single-family dwelling. The property is located in a Two Family Residential District (“RD-2”), as designated by the current City of New Orleans Comprehensive Zoning Ordinance (“CZO”).
Although the zoning classification RD-2 is intended for residential uses, Allison rented rooms on the second and third floors of the property to guests | ¡.beginning in 1961 when he acquired the property.[1] Allison was familiar with the history of the house prior to 1961, and noted that his family had an “interest” in the house for unspecified periods of time dating back to the 1930s, when Tulane University purportedly used the house as a “hotel”.[2] He further noted that, as far as he knew, the house had always been used as lodging for guests or boarders. At the time he purchased the property, it was being used as a rooming house with rentals by the night.
Allison initially collected rent daily from his tenants, but soon switched to weekly rentals because they were less trouble. He stated that during the entire time he owned the property, almost all of the rooms he rented were rented on a weekly basis, although there were a few tenants who paid on a monthly basis. He did testify, however, in his deposition that he had never had a guest leave after only one night or one week. He further testified that the average stay of his tenants was from four to six months. He averred that his tenants were not tourists, and stated that he did not rent his units out for “even two weeks” because he did not want to undertake the expense and trouble of advertising the rental space repeatedly for such limited terms. He did not have written leases with his tenants. He characterized the house as a “rooming house” and the occupational licenses granted to him by the City of New Orleans reflect that designation.
13After purchasing the property in 1998,[3] Craig and Bacharach operated the property as a weekly and nightly rental. On 1 December 1998, Bacharach applied for a renewal of the occupational license that had been issued to Allison by the City of *533 New Orleans. In 1999, appellants applied for an occupational license and described their business as a “transient guest house/rooming & boarding house” and noted that they had changed the name of the business to “Castle Inn of New Orleans” (“Castle Inn”). Castle Inn was subsequently granted occupational licenses for the years 1999, 2000, and 2001.
On 1 October 2001, the Zoning Administrator for the City of New Orleans sent a letter to Bacharach advising her that the Department of Safety and Permits had determined that 1539 Fourth Street had not obtained legal nonconforming status as a transient vacation rental. Appellants sent a letter of appeal of the decision of the Zoning Administrator to the BZA on 13 November 2001. They attached several documents to their letter of appeal, including the affidavit executed by Allison, copies of rent receipts from 1961 through 1998, and copies of several occupational licenses granted by the City to Allison and appellants to run a rooming house.
The appeal was heard by the BZA on 11 March 2002. Bacharach, Craig, and Allison testified at the hearing, as well as a number of neighboring property owners[4] who opposed the use of the house by Ba-charach and Craig as a “transient |4rental property.” Several neighbors testified that there had been a noticeable change in the use of the property since appellants had purchased it. They had noted taxi cabs arriving at all hours to pick up and deliver guests to the property; traffic had increased in the neighborhood; Castle Inn had begun using a linen service and received deliveries on a regular basis; and a local “ghost tour” had listed the property as a stop on its walking tour. Essentially, the complaints of the GDA and concerned neighbors seemed to stem from the change in the use of the property from a residence (albeit temporary) for locals to a rental property for tourists.
On 15 March 2002, the BZA denied the appeal of the decision of the Zoning Administrator and further found that 1539 Fourth Street had not obtained legal nonconforming status as a transient vacation rental.
Bacharach and Craig subsequently filed a Petition for Appeal and Writ of Certiora-ri to the Civil District Court for the Parish of Orleans on 11 April 2002, praying for the district court to overrule the BZA decision. In their petition, Bacharach and Craig plead that the action of the BZA was clearly wrong, insofar as Allison had operated a rooming house as a legal, nonconforming use of the property and that that status remained with the property, insofar as the use of the property had remained the same and was uninterrupted after they acquired the property. Further, appellants referenced La. R.S. 9:5625(A), ostensibly to assert a prescription argument.[5]
*534 IsOn 10 June 2002, the GDA filed a petition of intervention in appellants’ suit against the BZA, asserting that appellants’ use of the property was not authorized under the CZO and that 1539 Fourth Street had not obtained legal nonconforming status as a transient vacation rental as defined by the CZO. Further, the GDA opposed any attempt on the part of appellants to claim that La. R.S. 9:5625(A) provided any means of acquiring the legal, nonconforming use status of the property from Allison.
GDA filed a motion for summary judgment on 9 February 2004 seeking to have appellants’ appeal of the BZA decision dismissed, as well as to enjoin appellants from continuing to use the property in an illegal manner. In its motion, GDA attacked appellants’ position, asserting that while appellants focused on the method of collecting rent utilized by Allison, the fact that is determinative of the issue before the court was the “length of stay” or “duration of occupancy” of the tenants, insofar as the length of stay is what determines under which definition in the CZO the property in question falls and which is used to categorize rental properties for zoning purposes.
The district court granted GDA’s motion for summary judgment on 12 July 2004. In its reasons for judgment, the court found that Allison had operated a “rooming house” as defined by the 1970 CZO, and that the typical length of rental by Allison was at least thirty days, although he collected rent weekly. Given the | ^factual nature of the determination before it, the trial court found that appellants failed to establish that the BZA’s findings were arbitrary or capricious. Therefore, the district court affirmed the ruling of the BZA.[6]
On 30 September 2004, Bacharach and Craig lodged this appeal of the district court’s judgment affirming the decision of the BZA. Bacharach and Craig assert that the district court erred in affirming the decision of the BZA because (1) transient vacation rentals are allowed at 1539 Fourth Street as a legal non-conforming use and (2) they have not made a more intensive use of the property than Allison did. Therefore, they assert that, as a matter of law, they are entitled to enjoy the same legal non-conforming status as the property’s previous owner. They further maintain that this court should review the findings of the district court de novo. They do not, however, pursue an argument based upon prescription under La. R.S. 9:5625(A).
GDA filed an answer to appeal, praying that this court affirm the district court’s judgment and further enlarging the judgment to specifically enjoin Craig and Ba-charach from violating the CZO by using 1539 Fourth Street for transient vacation rentals. GDA also prayed for costs associ *535 ated with the proceedings in the district court and this court.
Bacharach and Craig maintain that Allison’s rental practice, which began before the current CZO restrictions were in place, qualified as a transient vacation rental under the current CZO, and is a legal, nonconforming use of 1539 Fourth |7Street. The GDA asserts, however, that appellants have not acquired the right to operate a transient vacation rental at 1539 Fourth Street because Allison did not have that right. Instead, the GDA maintains that Allison operated what was labeled a “boarding house” under the prior CZO for New Orleans, which was enacted in 1957.
Decisions of the BZA are subject to a “presumption of validity” and as such, a reviewing court should not reverse a decision of the BZA unless there is ■ a clear showing that the decision (1) was arbitrary or capricious, (2) was an abuse of the BZA’s discretion, or (3) was manifestly erroneous based on the evidence in the record on appeal. Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La.App. 4 Cir.1992). In the matter sub judice, the reviewing court was the Civil District Court of Appeal and its inquiry was necessarily limited to the constraints discussed above. We, however, are reviewing the granting of a motion for summary judgment. Therefore, we review the decision to grant the summary judgment de novo, including the district court’s application of the standard of review set forth in Elysian Fields, Inc. v. St. Martin.
It is uncontested that Allison enjoyed a legal, nonconforming use of the property. Such a usé of real property in violation of local zoning ordinances are permitted under Louisiana law. The Louisiana Supreme Court, in Redfearn v. Creppel, 455 So.2d 1356, 1358 (La.1984), described the purpose of permitting nonconforming uses of property:
A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as | s“noncónforming use.” 1 Anderson, American Law of Zoning, § 6.091. Cf. 8A McQuillan, Municipal Corporations 3d ed., § 25.185; Black’s Law Dictionary 948 (5th ed.1979).
This type of nonconforming use is permitted to “avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of the objectionable buildings and uses already in the area.” Id. at 1358-59, citing, Fuller v. City of New Orleans, Dept. of Safety and Permits, Building Inspection and Permits, 311 So.2d 466 (La.App. 4th Cir.1975). However, insofar as allowing nonconforming uses of property undermines the purpose and effect of local zoning ordinances, this court has held that “decisions regarding such status should be viewed narrowly with all doubt resolved against continuation or expansion of the non-conforming use.” Humphrey v. Robertson, 97-1742, p. 8 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, 337. The key question in this matter is, therefore, whether appellants’ use of 1539 Fourth Street is a continuation of the same nonconforming use that Allison enjoyed, or, alternatively, a more intensive, different nonconforming use in violation of the CZO.
In 1961, Allison’s use of 1539 Fourth Street was governed by the CZO in effect at the time, which was enacted in 1957. The 1957 CZO provided the following definitions:
LODGING HOUSE:
A building containing not more than fifteen (15) rooms with sleeping facilities *536 where lodging only is provided for compensation and by previous arrangement to three (3) or more persons but not exceeding twenty (20) persons.
ROOMING HOUSE:
See Lodging House.
| ¡(Allison’s description of the property and his use of it from 1961 until 1998 clearly fall within the definition of a “lodging house.” When the 1970 CZO was adopted, the definition for “lodging house” was replaced with a referral to the definition of “rooming house.” Since 1970, “rooming house” has been defined as follows:
A building other than an apartment hotel, hotel, small and large group home, residential care center, dormitory, motel or motor lodge, or tourist home, containing sleeping rooms where lodging or lodging and meals are provided for five (5) or more unrelated persons but containing less than fifteen (15) sleeping rooms. The sleeping rooms generally do not have private bathrooms or kitchens attached thereto. In a residential zoning district, the minimum length of stay in a rooming house shall be thirty (30) days.
CZO, Article 2, Section 2.2, definition 154.
Thus, the question is whether Allison’s use of the property, pursuant to the 1970 revisions to the CZO qualified as a “rooming house” or “transient vacation rental.” There is no dispute that the use sought to be enjoyed by appellants is that of a “transient vacation rental.”
The 1970 CZO defines “transient vacation rental” as follows:
Rentals in a dwelling, hotel, motel, timeshare building, motor lodge, boarding and lodging home, trailer, tourist court, or tourist home to nonresidents over the course of one (1) or more years, with duration or occupancy of less than thirty (30) days.
CZO, Article 2, Section 2.2, definition 188.
GDA asserted, and the BZA agreed, that the use of the property changed from “lodging house” to “transient vacation rental” as defined by the CZO after appellants acquired it. Appellants assert, however, that Allison’s use of the property is more accurately defined as a transient vacation rental insofar as he | incollected rentals on a weekly basis, and therefore his tenants were not legally obligated to stay for more than the rental period, or one week.
Although Allison collected the rents weekly from his tenants, the thrust of his deposition testimony is that he rented units to tenants who lived there for unspecified periods of time, but for more than a couple of weeks. He did not testify regarding the negotiating process with prospective tenants; it is unknown whether he imposed a minimum stay on tenants or whether they were free to stay as long as they were able to pay the rent. The picture painted by the preponderance of the evidence is that Allison’s tenants were not “transient” in nature; a review of the receipts kept by Allison documenting the identity of his tenants and the rents collected reinforces this conclusion. At the time he sold the property to appellants, it seems that every room was being rented to an individual who had been there for at least a few weeks, even though the majority of them paid rent in weekly installments.[7] Therefore, it is reasonable to conclude that the “duration or occupancy” of the leases between Allison and his tenants *537 were at least thirty days and that Allison operated a “rooming house” under the 1970 CZO and not a transient vacation rental, which is what is being operated by appellants.
Although we are troubled that appellants may lose the use of the property in which they apparently have invested a great deal of time and money, we cannot find that the ruling of the BZA was arbitrary or capricious, or manifestly erroneous. Sufficient evidence was presented to the BZA that the nature of the rental situation at the property changed significantly after appellants purchased the | n property, essentially changing it from a low-income residence for tenants (rooming house) to a transient rental for tourists. Thus, appellants did not inherit a legal non-conforming use of the property from Allison and their use of the property is in violation of law. Insofar as the BZA’s decision is supported by the evidence in the record, and insofar as we may not overrule BZA decisions on zoning matters unless “the weight of the evidence in its entirety so strongly preponderates against such conclusions that it compels us to find an abuse of discretion on the part of the Board,” we affirm the ruling of the trial court granting GDA’s motion for summary judgment (affirming the ruling of the BZA). Gertler v. City of New Orleans, 346 So.2d 228, 238 (La.App. 4 Cir.1977).
We further find that appellants made a “more intensive use” of the property than Allison had. Although a property owner is permitted to change from one nonconforming use to another under the CZO, the change may not be to a “more intensive” use:
Section 13.4 Change of use.
13.4.1 General Rule.
In all districts, except the Vieux Carré Districts and the Historic Mar-igny/Tremé Districts, if no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or more restrictive classification, provided that the new nonconforming use is not more intensive than the prior use. Whenever a nonconforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use. [Ord. 18,573 § 1 (part), adopted 1/8/98].
The evidence in the record before us supports the conclusion that appellants made a “more intensive use” of the property: they did not continue to use the first floor of the property as a residence, as did Allison, and their guests do not live at the 1 ^residence, but rather stay for only a few days at a time, increasing the turnover and traffic at the property. Thus, while the property was used as a residence by Allison and his tenants, it is now used as a fully commercial lodging, catering exclusively to tourists visiting New Orleans for very short periods of time. Finally (and most importantly), our finding that the nonconforming use of the property changed from a rooming house to a transient vacation rental leads us to conclude that the use of the property was “more intensive.”
Insofar as we find that appellants have not established that they are entitled to a nonconforming use of the property, we must grant the GDA’s motion for injunc-tive relief. We have held that where the use of a property is in violation of law, a party need not show irreparable harm to have the prohibited activity enjoined. Miller v. Knorr, 553 So.2d 1043 (La.App. 4 Cir.1989). As such, we amend the judgment below to provide that appellants, Craig and Bacharach, operating as Castle Inn of New Orleans, Inc., are permanently *538 enjoined from use of the premises as a transient vacation rental. We do not address the possible right of appellants to use the property as a rooming house, as it is not before us.
With regard to GDA’s request for costs associated with this litigation, we remand the matter to the district court so that it may determine the amount of the costs to be assessed to appellants.
AMENDED; AFFIRMED AS AMENDED; REMANDED.
MURRAY, J., concurs and assigns reasons.
hMURRAY, J., concurs and assigns reasons.
Considering the evidence, I cannot say that the decision of the BZA was arbitrary, capricious or an abuse of discretion. On this basis, I concur in the result reached by the majority.

. Allison executed an affidavit that appellants attached to their appeal of the BZA decision. He was also deposed during the course of this litigation and testified at a hearing before the BZA. The transcripts of both of those appearances are part of the record on appeal.

. Allison’s brother apparently owned the property prior to his 1961 acquisition of the property. There was one intervening owner of the property between the two Allison brothers.

.Interestingly, Allison describes his transaction with Bacharach and Craig as a sale of the house and his business, although the documents regarding the cash sale of the house do not reference any transfer of any business interest to appellants.

. The neighboring property owners were represented at the BZA hearing and in the current litigation by the Garden District Association ("GDA"). The GDA is a homeowners association whose purpose is "to preserve and protect the interests of its more than two hundred fifty members, nearly all of whom live within the Garden District neighborhood.” It is undisputed that 1539 Fourth Street is located in the Garden District.

. La. R.S. 9:5625(A) provides that:
(1) [a]ll actions civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regula *534 tion, must be brought within five years from the first act constituting the commission of the violation.
[[Image here]]
(4) Except as relates to nonconforming signs and billboards, any prescription heretofore accrued by the passage of two years shall not be interrupted, disturbed, or lost by operation of the provisions of this Section.

. Although we are sure that the district court intended to affirm the decision of the BZA, the following sentence concluding the court's reasons for judgment is somewhat puzzling: “This court finds that the record is replete with evidence that the property was being used as a "Rooming House” by Mr. Allison and the plaintiffs.” As noted infra, a finding that both Allison and appellants were using the property as a "rooming house” supports the position of Bacharach and Craig that their use of the property was a continuing, uninterrupted use established decades earlier by Allison.

. It is admittedly difficult to get a clear picture of the exact amount of time that Allison’s tenants had been in residence at 1539 Fourth Street at the time appellants purchased the property, insofar as only some of the rental receipts for the years that Allison owned the property are contained in the record on appeal.