# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 2, 2010

Nos. 08-40755 & 08-40945
Summary Calendar

Charles R. Fulbruge III
Clerk

DANIEL RAY UNGER,

Plaintiff–Appellant,

v.

SHERIFF GREG TAYLOR; DEPUTY SHERIFF JOHN SMITH; DEPUTY
SHERIFF BRYAN CHASON; JAILOR ZAK MONTOYA; JUSTICE OF THE
PEACE CARL DAVIS; ANDERSON COUNTY, TEXAS,

Defendants–Appellees.

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 6:06-CV-466

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Daniel Ray Unger appeals the district court's judgment on his claims
under 42 U.S.C. § 1983.  We affirm.

## I

In 2005, as Unger was driving through Anderson County, Texas, with an
out-of-state license plate, he was pulled over by Deputy Sheriff John Smith,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 08-40755 & 08-40945

purportedly for defective exhaust equipment. Deputy Smith asked Unger for his driver's license and proof of liability insurance, and Unger replied that he had neither. Deputy Smith then asked Unger for his name and date of birth. Unger gave the deputy his name and explained that he did not use a birthday since, as an identifying number, it could be used to obtain a social security number, which would violate his deeply held religious belief of not being numbered. He also claimed that he could not be arrested since, as the "direct posterity of the American people," he had sovereign immunity.

Deputy Sheriff Bryan Chason arrived at the scene shortly after Deputy Smith. Deputy Smith frisked and handcuffed Unger, and Deputy Chason then transported Unger to the Anderson County Jail. Unger was booked on charges of operating a vehicle without liability insurance, operating a vehicle without a valid driver's license, and operating a motor vehicle with defective equipment. The following afternoon he was arraigned before Justice of the Peace Carl Davis. Unger refused to enter a plea. He was released the same day after posting $1,500 in bail.

Unger subsequently filed a petition for writ of habeas corpus against Sheriff Greg Taylor and Justice Davis in the County Court of Anderson County, Texas. In a hearing on the petition, the court discovered that the charges against Unger were erroneously filed in the 2nd Precinct of Anderson County, rather than the 1st Precinct, where the alleged traffic offenses occurred. Because under Texas law misdemeanor cases are to be tried in the precinct in which the offenses occurred,[1] the court ruled that Justice Davis did not have proper venue and dismissed the charges against Unger. Unger's bail was then returned to him.

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 4.12(a)(1).

2

No. 08-40755 & 08-40945

Unger, proceeding pro se, sued Sheriff Taylor, Deputy Smith, Deputy Chason, Jailor Zak Montoya, Justice Davis, and Anderson County, Texas, alleging numerous constitutional violations. He also brought state law claims of intentional infliction of emotional distress, false imprisonment, and malicious prosecution. Both Unger and the defendants moved for summary judgment. The district court granted summary judgment in favor of the defendants based on qualified immunity for Unger's Fourth Amendment claim in connection with his arrest and subsequent detention, his Fourth Amendment claim in connection with the search of his person and the car, his Eighth Amendment claims related to the continuous illumination in the jail and the jail's unsanitary conditions, his First and Eighth Amendment claim that he was denied a diet in accordance with Biblical dietary laws, his Eighth Amendment claims that he was tortured, deprived of a blanket, and not allowed to make telephone calls, his claim that he was denied his constitutional right of access to the courts, his Fourth Amendment claim that he was not brought promptly before a magistrate, his Sixth Amendment claim for denial of access to an attorney, and his claim for violation of the right to travel. The court ruled that the defendants were not shielded by qualified immunity on Unger's Fourth Amendment claim against Deputy Smith for the initial traffic stop and his Eighth Amendment claim that he was denied bedding. The court further ruled that Justice Davis was entitled to judicial immunity as to all of Unger's claims against him, that Unger had failed to state a claim of municipal liability against Anderson County, and that the defendants were entitled to summary judgment on all of Unger's state law claims. The court denied Unger's motion for summary judgment in its entirety.

Unger subsequently moved to amend his complaint, and the court denied the motion. His two remaining claims proceeded to trial, and the jury ruled in favor of the defendants on both claims.

Unger now presents five issues on appeal. First, he asserts that the district court abused its discretion when it denied his motion to amend his complaint. Second, he claims that the district court erred in denying his motion for summary judgment. Third, he contends that the district court erred in partially granting the defendants' motion for summary judgment. Fourth, he avers that the district court abused its discretion in denying his motion to compel. And finally, he argues that the district court abused its discretion when it proceeded to hear the case after Unger filed an affidavit alleging judicial bias.

## II

We review the district court's denial of a motion to amend the complaint for abuse of discretion.[2] Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend the complaint should be given "freely . . . when justice so requires."[3] But because Unger filed his motion to amend the complaint nearly eleven months after the deadline for amendments in the scheduling order, his motion to amend is governed by Rule 16(b).[4] Under Rule 16(b), a scheduling order may be modified only "for good cause."[5] We consider four factors in determining good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[6]

---

[2] *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).

[3] F ED. R. CIV. P. 15(a)(2).

[4] *See Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

[5] F ED. R. CIV. P. 16(b)(4).

[6] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (internal quotation marks omitted).

Unger argued that the district court should allow amendment since he was pro se and had "inartfully pled" his claims.  As reasons for the denial of Unger's motion, the district court cited the tardiness of the motion, the imminence of trial, and the defendants' failure to consent to the amendment.  Under these circumstances, and considering Unger's failure to explain the untimeliness of his motion, the district court acted within its discretion in denying Unger leave to amend.

## III

Unger next contends that the district court erred in denying his motion for summary judgment.  But "an interlocutory order denying summary judgment is not to be reviewed where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits."[7]  Once trial begins, "the summary judgment motion[] effectively [becomes] moot."[8]  Because Unger received an adverse final judgment after a jury trial on the merits of his case, we will not consider his appeal from the denial of his motion for summary judgment.

## IV

Unger also appeals from the district court's grant of partial summary judgment in favor of the defendants.  We review the grant of a motion for summary judgment de novo, applying the same standard as the district court.[9]  Summary judgment is appropriate when the competent summary judgment evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[10]

---

[7] *Black v. J.I. Case Co., Inc.*, 22 F.3d 568, 570 (5th Cir. 1994); *see also Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 n.4 (5th Cir. 2009) (noting that we normally decline to review a district court's denial of summary judgment after full trial on the merits).

[8] *Black*, 22 F.3d at 571.

[9] *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

[10] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

No. 08-40755 & 08-40945

Unger challenges seven of the rulings in the district court's order granting partial summary judgment. He challenges the district court's grant of summary judgment based on qualified immunity for (1) his Fourth Amendment claim in connection with his arrest and subsequent detention, (2) his Fourth Amendment claim in connection with the search of his car and his person, (3) his Fourth Amendment claim for failure to bring him promptly before a magistrate, (4) his claim for violation of the right to travel, and (5) his claims related to his punishment as a pretrial detainee. Unger also challenges: (6) the district court's ruling that Justice Davis was entitled to judicial immunity and (7) its dismissal of his claims for municipal liability against Anderson County.

## A

Qualified immunity protects government employees against civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11] The Supreme Court has articulated a two-prong inquiry into resolving government officials' qualified immunity claims.[12] Under the first prong, the court must decide whether the facts the plaintiff has shown make out a violation of a constitutional right.[13] The second prong requires the court to consider "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[14] The court may consider these prongs in any sequence.[15]

As to the second inquiry, a right is "clearly established" when "the

---

[11] *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted).

[12] *Id.*

[13] *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009).

[14] *Id.* at 816.

[15] *Id.* at 818.

contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right."[16]  The focus is on "fair warning" and whether the official would be "on notice" that his actions violated constitutional rights.[17]

## 1

Unger first contends that the district court erred in granting summary judgment on his claim that Deputy Smith and Deputy Chason violated his Fourth Amendment rights by unlawfully arresting and detaining him.  The district court ruled that the officers were entitled to qualified immunity since Unger had failed to show that they had violated a constitutional right.

To succeed on a constitutional claim for unlawful arrest, the plaintiff must show that the arrest was not supported by probable cause.[18]  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[19]

Deputy Smith asserts that he had probable cause to arrest Unger on three grounds: (1) driving without a license in violation of Texas Transportation Code § 521.021, (2) driving without liability insurance in violation of § 601.051, and (3) operating a vehicle with defective equipment in violation of § 547.605.  It is undisputed that Deputy Smith asked Unger for his license and proof of insurance[20] and that Unger responded that he had neither.  At that point,

---

[16] *Wernecke*, 591 F.3d at 392 (internal quotation marks and citation omitted).

[17] *Id.* at 393.

[18] *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

[19] *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)) (internal quotation marks omitted).

[20] A law enforcement officer may request the driver's license and vehicle registration in connection with a traffic stop.  *See United States v. Brigham*, 382 F.3d 500, 507-08 (5th Cir.

Deputy Smith had probable cause to arrest Unger for violation of § 521.021 and § 547.605.[21]  Accordingly, Unger has not shown that there are triable factual issues as to whether the arrest violated his constitutional rights.  The district court correctly granted summary judgment on this claim.

**2**

Unger next argues that the district court erred in granting summary judgment based on qualified immunity on his claim that Deputy Smith and Deputy Chason unlawfully searched his car and his person.  Unger contends that the searches were unlawful since they were not incident to a lawful arrest.  He does not contest the scope of the searches.

Law enforcement officers "may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence."[22]  Such warrantless searches may be performed in connection with any arrest based on probable cause.[23]  Here, after Unger's arrest, Deputy Smith and Deputy Chason performed a limited search of Unger's car, as well as his person and wallet, in an effort to find proof of insurance and vehicle registration.  Because the arrest at issue was based on probable cause and thus lawful, the subsequent searches of Unger's car and person were also lawful.  As such, the district court correctly granted summary judgment on this claim.

**3**

Unger next asserts that the district court erred in ruling that the officers

---

2004).

[21] *See Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001) (holding that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender").

[22] *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008).

[23] *Id.*

were entitled to qualified immunity in connection with his claim that they violated his Fourth Amendment rights by failing to take him promptly before a magistrate.

The Supreme Court has held that persons arrested without a warrant "must promptly be brought before a neutral magistrate for a judicial determination of probable cause."[24] The Court has further explained that determinations of probable cause within 48 hours of arrest will generally be considered prompt.[25] Still, a probable cause determination within 48 hours may not pass constitutional muster if the arrested person can show that the determination was "delayed unreasonably."[26] Examples of unreasonable delay might include "delay incurred for the purpose of gathering additional evidence to justify the arrest, delay motivated by ill will against the arrested individual, or delay for delay's sake."[27]

Here, it is undisputed that Unger was arrested on October 27, 2005, booked into the jail at 11:23 a.m. that same day, and taken before Justice Davis for arraignment the following day at 1:47 p.m. Thus Unger's appearance before the magistrate occurred within the 48-hour time frame required by *McLaughlin*. However, the probable cause determination could still be unconstitutional if it was "delayed unreasonably."

Defendants provided evidence that on October 28, 2005, Justice Davis completed his arraignments prior to the booking of Unger and held no other arraignments until the following day. Unger did not refute this evidence. Nor

---

[24] *County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)).

[25] *Id.* at 56.

[26] *Id.*

[27] *White v. Taylor*, 959 F.2d 539, 546 (5th Cir. 1992).

did he provide any evidence of unreasonable delay.  Accordingly, Unger has not shown that there are issues of material fact concerning whether the less than 48-hour delay violated his constitutional rights.

**4**

Unger next argues that the district court erred in dismissing his claim for violation of his constitutional right to travel.  Although there is a fundamental right to travel, the Supreme Court has recognized that there are "situations in which a State may prevent a citizen from leaving," such as when "a person has been convicted of a crime within a State."[28]  The Court has further explained that "even before trial or conviction, probable cause may justify an arrest and subsequent temporary detention" such that the person is "temporarily deprived of his freedom to travel elsewhere within or without the State."[29]  Here, as discussed *supra*, Deputy Smith had probable cause to arrest Unger for driving without a license or liability insurance.  Accordingly, Unger's brief detention did not violate his right to travel, and the district court properly granted summary judgment on this claim.

**5**

Unger's brief also states that "the gravamen of his claim of punishment as a pretrial detainee is as follows" and then lists five problems he had with his pretrial detention, including his placement in a holding tank, his lack of access to a phone, his lack of access to pencil and paper, his lack of bedding, and his lack of visitation.  His brief does not present any arguments with regard to these issues and does not address the district court's reasons for dismissing his claims.  Although pro se briefs are liberally construed, "such litigants must still brief

---

[28] *Jones v. Helms*, 452 U.S. 412, 419 (1981).

[29] *Id.*

contentions in order to preserve them."[30]   Claims not adequately argued in a brief are deemed abandoned on appeal.[31]   Accordingly, Unger has waived these issues.

## B

Unger also challenges the district court's summary judgment ruling that Justice Davis is entitled to judicial immunity.   Unger contends that Justice Davis "falsely acted in the capacity of a judicial officer in a case in which he was wholly lacking in jurisdiction."

A judge generally has absolute immunity from suits for damages.[32]   This immunity extends to justices of the peace.[33]   Judges do not, however, have immunity for "actions not taken in the judge's judicial capacity" or for "actions, though judicial in nature, taken in the complete absence of all jurisdiction."[34]   In considering whether a judge's action was in the complete absence of jurisdiction, "the scope of the judge's jurisdiction must be construed broadly."[35]   A judge will not be deprived of immunity merely because his action "was in error, was done maliciously, or was in excess of his authority."[36]

Unger's contention that Davis's actions in arraigning him were "wholly lacking in jurisdiction" has no merit.   All of the actions of which Unger complains—denying him the right to make a phone call in court, failing to make

---

[30] *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007).

[31] *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

[32] *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 221 (5th Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)), *cert. denied*, 130 S. Ct. 624 (2009).

[33] *Brewer v. Blackwell*, 692 F.2d 387, 396 (5th Cir. 1982).

[34] *Mireles*, 502 U.S. at 11-12.

[35] *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

[36] *Id.*

a finding of probable cause, denying his request for paper and pencil in court, and asking him to enter a plea to the charges—are judicial in nature. And while Justice Davis's actions may have been in error since Unger was taken to the wrong precinct, that does not render them performed "in the complete absence of jurisdiction."[37] The district court correctly ruled that Justice Davis was entitled to absolute immunity.

## C

Unger's next challenge to the district court's summary judgment ruling concerns its dismissal of his claim against Anderson County. Unger contends that Anderson County intentionally violated his right to due process of law, right of access to courts, right to counsel, right not to be punished as a pre-trial detainee, and right to liberty.

A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'"[38] To establish municipal liability under § 1983, the plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[39]

Unger has not shown that there are issues of material fact as to whether Anderson County had an official policy resulting in constitutional torts. The official policy requirement can be met in at least three different ways: (1) when an "officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of the policy"; (2)

---

[37] *See id.*

[38] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 680 (1978)).

[39] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009), *pet. for cert. filed*, No. 09-983 (Feb. 16, 2010).

when there is no official policy announced, "but the action of the policymaker itself violated a constitutional right"; or (3) when the policymaker fails to act affirmatively when the need to take action "is so obvious" that the policymaker's inaction renders it "deliberately indifferent to the need."[40]  Unger's convoluted allegations appear to allege that Anderson County had policies or customs of incarcerating individuals "without authority of sworn complaints," punishing pre-trial detainees for their religious beliefs, and violating the constitutional rights of pre-trial detainees.  But Unger has provided no competent summary judgment evidence to support his assertion that Anderson County had such a policy.  His only piece of evidence—a statement in his affidavit that he spoke with a man named Howard Gambrell who was also "denied his rights as punishment for the exercise of his religious beliefs, placed in the holding tank of the Anderson County jail, and denied the right to use the phone to call counsel"—is not based on personal knowledge, and thus is not competent summary judgment evidence.[41]

Accordingly, Unger has not shown that there are triable issues of fact on the issue of municipal liability.

## V

In addition to his specific challenges to the district court's summary judgment ruling, Unger argues that the ruling was improper since the defendants' summary judgment motion and reply should have been struck for noncompliance with the local rules.  Specifically, Unger asserts that the defendants' motion for summary judgment failed to include a statement of undisputed material facts and failed to include appropriate citations to proper summary judgment evidence as required by Local Rule CV-56.  Unger further

---

[40] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999).

[41] *See* FED. R. CIV. P. 56(e)(1).

argues that the magistrate judge should not have given consideration to the defendants' reply brief since it exceeded the page limitation in Local Rule CV-7 and was untimely.

We review a district court's enforcement of the local rules for abuse of discretion.[42]   Here, the district court was within its discretion in refusing to strike the defendants' summary judgment motion and reply brief.  Contrary to Unger's allegations, the summary judgment motion contained a section of undisputed material facts and citations to the defendants' summary judgment evidence.  And while the reply brief did exceed the page limitation, Local Rule CV-7(l) gives the district court discretion to allow motions in excess of the page limitation.  Similarly, Local Rule CV-7(e) gives the court discretion to allow reply briefs beyond the typical five-day deadline.  Under these circumstances, we find no abuse of discretion in the district court's refusal to strike the reply brief.

## VI

Unger next argues that the district court abused its discretion in denying his motion to compel production of certain personnel files.  In his motion, Unger complained that the 1,000-page personnel file already produced by the defendants was illegible in parts.  Defendants responded that the plaintiff could come by the sheriff's office to review the file personally.

We review the district court's denial of a motion to compel for abuse of discretion.[43]  A trial court's decision pertaining to discovery should be reversed "only in an unusual and exceptional case."[44]  Here, the district court acted within its discretion in denying the motion to compel since the defendants had already

---

[42] *United States v. Rios-Espinoza*, 591 F.3d 758, 760 (5th Cir. 2009).

[43] *Burns v. Exxon Corp.*, 158 F.3d 336, 342 (5th Cir. 1998).

[44] *O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 499 (5th Cir. 1985) (internal quotation marks omitted).

produced the personnel file and had also given Unger the opportunity to review the file in person.

## VII

Lastly, Unger contests the district court judge's refusal to recuse himself after Unger filed an affidavit alleging bias and moving for the judge's recusal under 28 U.S.C. § 144 and § 455. We review the denial of a motion to recuse for abuse of discretion.[45] Section 144 relates to charges of "actual bias."[46] To proceed under § 144, the movant must present an affidavit that meets the following requirements: "(1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature."[47] Under § 455, a judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned."[48] The standard is "whether a reasonable person, with full knowledge of all of the circumstances, would harbor doubts about the judge's impartiality."[49]

Unger's affidavit essentially alleges that the district court judge was biased because of his unfavorable rulings on Unger's numerous nonmeritorious motions, objections, and complaints. Because the alleged bias is "judicial," rather than "personal" in nature, the facts alleged do not meet the requirements

---

[45] *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999).

[46] *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990).

[47] *Id.*

[48] 28 U.S.C. § 455(a).

[49] *Matassarin*, 174 F.3d at 571.

for a § 144 affidavit.[50] Neither do the allegations show that a reasonable person would doubt the district court judge's impartiality. As such, the district court did not abuse its discretion in denying Unger's motion.

*    *    *

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[50] *See Davis v. Bd. of Sch. Comm'rs of Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975) (explaining that the alleged bias was not extra-judicial, but "very much judicial," since the movants were complaining of language in an order and an opinion).