# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 15, 2011

No. 11-60148
Summary Calendar

Lyle W. Cayce
Clerk

GEORGE BUSH; GCW, L.L.C.,

Plaintiffs – Appellants

v.

CITY OF GULFPORT, MISSISSIPPI;
JOHN DOES 1-5, in their individual capacities,

Defendants – Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:07-CV-906

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Appellants GCW, L.L.C. and George L. Bush appeal the district court's dismissal of their lawsuit against the City of Gulfport, Mississippi, and certain unidentified city officials. Appellants claim that the City violated their substantive due process and equal protection rights when it improperly denied their building permit application. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60148

## I. FACTUAL AND PROCEDURAL BACKGROUND

Large sections of Gulfport, Mississippi, were heavily damaged when Hurricane Katrina came ashore on August 29, 2005. One of the buildings destroyed by the storm was owned by Plaintiff-Appellant GCW, L.L.C. and leased by Plaintiff-Appellant George Bush (collectively, "Appellants"). Since 2001, Bush had operated a nightclub on the property called "Club Illusions." The property neighbored a strip mall owned by the father of former Gulfport Mayor Brent Warr ("Warr"). After the hurricane came ashore, only a concrete slab remained where the building that housed Club Illusions had once stood. Appellants started rebuilding efforts shortly after they were allowed back onto the property to survey the damage. Bush engaged an architectural firm in March 2006, and made contact with officials at the Planning and Urban Development Department of Defendant-Appellee City of Gulfport ("the City" or "Appellee"). Removal of the existing slab and debris began in April 2006.

Appellants allege that their rebuilding efforts were blocked when, in July 2006, Mayor Warr "undertook by executive fiat to amend the City's Zoning Ordinance in an apparent effort to exclude the [Appellants'] operation of Club Illusions in front of his father's strip mall." The amendment was formally accomplished through City Ordinance 2482 ("Ordinance 2482"), which was passed by the city counsel on July 18, 2006.[1] Relevant here, Ordinance 2482 provides:

> Should [a] nonconforming structure of commercial use be destroyed or damaged by an act of God, including tornado, hurricane, flood, wind, earthquake, etc., . . . the structure may be replaced or repaired. However, such replacement or repair shall be subject to the following provision: Application for a building permit must be

---

[1] Appellants had alleged in their amended complaint that Ordinance 2482 was not properly enacted, or was enacted specifically to target them, but they do not argue this on appeal. The record reflects that Ordinance 2482 was considered and passed at a "duly constituted meeting of the City Council and the Mayor of the City of Gulfport."

2

No. 11-60148

made to the building official *within one year of the time that the structure was destroyed.* However, in cases of hardship the mayor and city council shall at their sole discretion have the authority to extend such one-year limitation for additional periods of time up to six (6) months each upon application of the owner or leaseholder prior to the expiration of the allowable nonconformity. (emphasis added)

The relevant provision in effect before the amendment (since 1979) provided for repair or replacement of non-conforming structures, with the following qualification:

Application for a building permit must be made to the Building Official *within one year of the time that the structure was destroyed.* However, in cases of hardship the Mayor and Board of Commissioners shall at its discretion have the authority to extend said one-year limitations for additional periods of time upon application of the owner or leaseholder. (emphasis added)

Thus, even prior to Ordinance 2482, building permits were subject to a one year time limitation. The purpose of the 2006 amendment was to extend the time period for applications to rebuild residential structures from one to two years. The City recognized that existing limitations would "work a severe hardship on those residential property owners who owned nonconforming structures that received total or substantial destruction by Hurricane Katrina," and enforcement of those limitations would "have an overall detrimental impact on restoration of the City of Gulfport." The time limitations on non-conforming commercial structures were left unchanged.

Appellants applied for a building permit on September 19, 2006, and the City Planning Department approved the building plans in October 2006, but not the permit itself. Appellants' application was submitted soon after the City adopted a flood damage prevention ordinance, with guidance from the Federal Emergency Management Agency ("FEMA") on September 5, 2006. On December 18, 2006, the City denied Appellants' application because it was incomplete and

3

violated the one year limitation of Ordinance 2482. On appeal, the City's Board of Adjustment affirmed the denial on the basis that Appellants' application was made outside the one year time limitation. This decision was subsequently upheld by the Gulfport City Council.

Displeased with this resolution, Appellants filed suit in the district court on June 27, 2007 against the City and certain John Doe defendants (unknown City agents). Appellants brought claims under 42 U.S.C. § 1983 for violation of procedural and substantive due process rights, equal protection, and state law claims for civil conspiracy and intentional infliction of emotional distress. Underlying Appellants' claims was their allegation that Mayor Warr had a personal interest in preventing Appellants from building on the property. This claim was based upon the fact that Warr's father owned a strip mall next to the nightclub, and had made statements to Bush that he would take whatever steps were necessary to shut down Club Illusions. Appellants contend that, after Hurricane Katrina, Mayor Warr had given himself the authority to personally review and approve all commercial building permit applications along the coastal area (including Appellants' property), and used his authority to ensure that Appellants' application was denied.

The district court granted Appellee's summary judgment motion, and dismissed Appellants' suit, including their due process and equal protection claims. The court declined to retain supplemental jurisdiction over Appellants' state law causes of action. Appellants timely appealed the district court's decision with respect to their substantive due process and equal protection claims. We now affirm.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo* and apply the same standard as the district court. *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836-37 (5th Cir. 2009). Summary judgment

No. 11-60148

is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010).

## III. DISCUSSION

### A. Substantive Due Process

Appellants contend that their substantive due process rights were violated when the City denied their building permit for irrational reasons, and that personal animosity was the actual motive behind the denial.

We have explained that "[a] violation of substantive due process . . . occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest." *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). A plaintiff who brings a substantive due process claims must satisfy two considerations. "First, he must allege a deprivation of a constitutionally protected right." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). Second, he must demonstrate that the government action is not "rationally related to a legitimate governmental interest." *Id.*

When we review a substantive due process claim, we pursue "either of two analytical tracks. A regulatory decision can be legislative or it can be adjudicative, and it will be reviewed differently depending on which category it is placed into." *Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986); *see also Vulcan Materials Co. v. City of Techuacana*, 238 F.3d 382, 388 (5th Cir. 2001) (citing *Shelton*, 780 F.2d at 479-84). Under the adjudicative model, "actions by state officials are tested by historical facts and "adequate

evidence found within a defined record." *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 934 (5th Cir. 1988) (citing *Shelton*, 780 F.2d at 479). As such, a court "using the adjudicative model must focus on what actually motivated the conduct." *Id.* In contrast, if the action is evaluated under the legislative model, the court asks only whether there was "a conceivable factual basis for the specific decision made?" *Shelton*, 780 F.2d at 479. "In practical terms, therefore, evidence that an official was motivated by an illegitimate purpose when he took an action cannot, under the legislative model, invalidate the official's action. Instead, if a court is able to hypothesize a legitimate purpose to support the action, the action must be treated as valid." *Mahone*, 836 F.2d at 934.

The district court concluded that Appellants could not establish a substantive due process violation because the City articulated a legitimate reason for denying Appellants' building permit, namely that the permit application was not submitted within one year after destruction of the non-conforming structure. The district court also concluded that enforcing this deadline is "rationally related to the City's interest in reducing the number of structures that are not compatible with the neighborhood around them."

We conclude that Appellants' substantive due process claim cannot survive summary judgment. We assume for purposes of this discussion that Appellants had a protected property interest in the building permit. *See Vineyard Investments, L.L.C. v. The City of Madison, Miss.*, No. 10-60968, 2011 WL 3911071, at *3 (5th Cir. Sept. 2, 2011) (assuming without deciding that applicant had property interest in building permit). Appellee argues that we should apply the legislative or quasi-legislative analytical framework, applicable to regulatory decisions regarding zoning and land use. The district court determined that the decision at issue was "quasi-legislative." While we have recognized that zoning decisions are "legislative" or at least "quasi-legislative," *Shelton*, 780 F.2d at 483,

we have not categorically said that building permit decisions fall into this classification, and have recently proceeded on the assumption that they are "adjudicative." *See Vineyard Investments*, 2011 WL 3911071, at *3. In this case, however, the distinction between the adjudicative and legislative analysis is minimal, as we are provided with an actual reason for the government action at issue here, and need not hypothesize a legitimate purpose to support the municipal action.

The evidence demonstrates that the City ultimately denied Appellants' building application because it was not submitted within the one year application period. It is undisputed that Appellants' building permit application was submitted on September 19, 2006, more than one year after the destruction of the property on August 29, 2005. Imposition of a one year deadline is rationally related to a legitimate government interest. The district court found a legitimate government interest in "reducing the number of structures that are not compatible with the neighborhood around them," and the City asserts such an interest as well. We also find that the one year limitation serves the legitimate interest of encouraging property owners to rebuild quickly, rather than allow their properties to remain in disrepair indefinitely. Enforcing the one year deadline by rejecting untimely applications is rationally related to these legitimate government interests, and we therefore do not find a violation of Appellants' substantive due process rights.

We are not persuaded by Appellants' primary argument on appeal, namely that the City's denial of their building permit was motivated by Mayor Warr's economic interest in their property and his personal animosity towards them. Abuse of executive power may, in some limited cases, constitute a violation of substantive due process. Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125, (1990) (internal

quotation marks omitted). To state a substantive due process claim based upon an abuse of executive power, "the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence. . . . [T]he Supreme Court's discussions of abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense. . . . The plaintiff must therefore demonstrate that the abuse of power by the state official shocks the conscience." *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 671 n.3 (5th Cir. 2007) (citations and internal quotation marks omitted); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("[F]or half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.").

The Supreme Court's decision in *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188 (2003) is instructive. There, the plaintiffs asserted, *inter alia*, a substantive due process claim after their building permit requests for a low-income housing complex were denied. Numerous citizens, city officials, and even the mayor opposed the project and voiced their opposition at various city council meetings. When the city council approved the project and issued an ordinance to that effect, a group of citizens petitioned for a referendum challenging the ordinance. While the referendum was pending, plaintiffs applied for their building permit. The city engineer, however, denied the request after being advised by the city law director that the permits could not be issued because the referendum delayed the effective date of the ordinance. The plaintiffs argued that their substantive due process rights were violated because the city engaged in arbitrary conduct in denying the permit and in allowing the approval to be subject to a referendum. *Id.* at 191-92, 198-99. The Court found no merit to these claims, and concluded that the city engineer's refusal to issue the permits "in no sense constituted egregious or arbitrary government conduct." *Id.* at 198. The Court explained that the "law

director's instruction to the engineer not to issue the permits represented an eminently rational directive," given that "the [project's] site plan, by law, could not be implemented until the voters passed on the referendum." *Id.* at 199. Thus, plaintiffs' substantive due process claim failed in light of the City's rational basis for its decision, even with evidence that many government officials were personally opposed to the project. *Id.*; *see also Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1264 (11th Cir. 2003) ("[E]ven with . . . evidence that the City targeted Greenbriar out of animosity, it is equally clear that the City was also motivated in part by a legitimate desire to enact a comprehensive and internally consistent land use system. It follows from these reasonable and legitimate governmental objectives that even if the Permit was a fundamental right protected by substantive due process, the City's actions were not constitutionally arbitrary and irrational.").

Appellants cite several portions of the record in support of their claim that their permit was denied due to Mayor Warr's own economic and personal motivations. These include statements by Mayor Warr's father that he wanted to shut down the club because it was a nuisance; hearsay statements that the permitting process was "political"; deposition testimony by building official Ron Jones that Mayor Warr had to personally approve post-Katrina commercial building permits in certain areas of the City; and an affidavit by Patricia Short, a former city employee who repeated hearsay statements from two other city officials (Ron Jones and Mike Edwards) that Mayor Warr had told them to ensure that Mr. Bush did not get a building permit. Mayor Warr denied personal involvement, but Appellants attack his credibility by noting that he was indicted for fraud following Hurricane Katrina in August 2009. Even viewed in the light most favorable to Appellants, we do not believe this evidence creates a genuine factual dispute as to whether Mayor Warr engaged in "egregious official conduct," or that his alleged actions constitute an "abuse of power by [a] state

official [that] shocks the conscience." *Marco Outdoor Adver.*, 489 F.3d at 671 n.3. Mayor Warr may have taken a personal interest in the property, but none of his actions rise to the level of a constitutional violation. This conclusion is reinforced by the fact that the permit's untimeliness provided the City with an undisputed, rational basis for the denial.

We are also not persuaded by Appellants' other arguments on appeal. First, Appellants argue that imposition of the one year time limit is not rationally related to a legitimate government interest because they filed their application shortly after the City enacted a new flood plain ordinance, and that ordinance controlled development in the City. They also contend that City officials should have exercised their discretion to excuse the one year limitation, as Appellants were not able to inspect the property in the period immediately after the storm. It is not our purpose, however, to determine whether it would have been better for the City to suspend the one year limitation period, or grant an extension in Appellants' case. The fact that City officials declined to utilize their discretion in Appellants' case does not mean that their decision is not rationally related to a legitimate governmental interest. Simply put, "the Due Process Clause does not empower the judiciary to sit as a superlegislature to weigh the wisdom of legislation" or policy decisions. *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 124 (1978) (internal quotation marks omitted).[2]

Second, Appellants contend that the City's December 18, 2006 letter denying their permit application was "pretextual and . . . not supported by the facts." They dispute the City's initial determination that their plans were

---

[2] Appellants also contend that Ordinance 2482 provides city officials with "unfettered discretion" to grant extensions to the one year limitation period, and that such discretion is "repugnant to the Fourteenth Amendment's notion of fair play and equal treatment under the law." They do not argue this point in significant detail, and so we do not consider it further. *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it on appeal.") (internal quotation marks omitted).

"incomplete." They also note that certain City officials, when deposed, either confirmed that the plan was complete or could not explain how it was lacking. Appellants' arguments, however, are not reflected by the facts. First, the December 18 denial letter not only concludes that the plans were "incomplete," but also specifically states that the permit application "violates Zoning text Ordinance 1501 (as amended by Ordinance 2482) Section VII(C)(3)(A)," which sets out the one year time limitation described above. In the same vein, Appellants entirely ignore the City's appellate decision, which again determined that the application should be denied as untimely. Appellants have failed to demonstrate that this reason was "pretextual" or even incorrect. In fact, they even readily admit that their application was not timely.

Even if the City's initial determination regarding whether the plans were "complete" was actually incorrect, an erroneous decision does not itself give rise to a constitutional claim. We have explained that "the power to decide, to be wrong as well as right on contestable issues, is both [a] privilege and curse of democracy." *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). Further, "the due process clause does not require a state to implement its own law correctly," or "insist that a local government be right." *Id.* Indeed, "[c]onverting alleged violations of state law into federal . . . due process claims improperly bootstraps state law into the Constitution." *Id.* (quoting *Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052, 1056 (5th Cir. 1985) (en banc)). As such, "a violation of state law is alone *insufficient to state a constitutional claim* under the Fourteenth Amendment." *Id.* (emphasis added). A panel of this court recently rejected an argument very similar to the one that Appellants advance here. In *Vineyard Investments, L.L.C.*, the panel rejected the appellant's argument that the city's denial of a building permit could not withstand rational basis review because a state appellate court had found that the city's reason for the denial was incorrect under Mississippi law. The panel explained that a

No. 11-60148

legally incorrect decision "does not automatically characterize the City's action as arbitrary and capricious." *Vineyard Investments, L.L.C.*, 2011 WL 3911071, at *2. The same rationale applies here. Even if the City had rested solely on the allegedly incorrect conclusion that the building permit application was incomplete, this would not be sufficient to state a substantive due process violation.[3]

Finally, Appellants contend that the City waived the twelve month application requirement through its conduct (namely processing the application without raising the time limitation and making certain representations), and is equitably estopped from attempting to enforce it under the present facts. The district court rejected this argument, holding that Appellants could not establish the necessary factual prerequisites, and that unofficial acts preceding the City's permitting process could not give rise to an equitable estoppel claim. We need not address this argument at length. As an initial matter, although Appellants raised an equitable estoppel theory on summary judgment, they never asserted such a claim in their amended complaint. Second, Appellants' estoppel argument lacks a direct bearing upon their constitutional claims. Section 1983 is a remedy for violations of constitutional rights, not violations of state law. *See, e.g.*, *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). In other words, even if the City were estopped from enforcing the time limitation under state law, this would not necessarily demonstrate a substantive due process or equal protection violation. Third, Appellants' equitable estoppel argument fails on the merits. Under Mississippi law, "the doctrine of equitable estoppel may be applied

---

[3] In this regard, Appellants also argue that their reconstruction of the property began in April 2006, and reference Section 7(a)(2) of Ordinance 2482, which provides an exception to the Ordinance for structures "on which actual construction was lawfully begun prior to the effective date of this ordinance." Because the one year limitation was in effect even prior to Ordinance 2482, we do not believe that this exception applies. Even if it should have applied, Appellants cannot base a substantive due process claim upon a merely incorrect state decision. *See FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).

12

against the state and its municipalities." *Suggs v. Town of Caledonia*, 470 So. 2d 1055, 1057 (Miss. 1985). The Mississippi Supreme Court has further explained that "the unauthorized acts of one of [a municipality's] officials does not estop a municipality from acting in its governmental capacity." *Suggs*, 470 So. 2d at 1057. Consistent with this rule, the Mississippi Supreme Court has declined to apply the doctrine when an equitable estoppel claim is based upon the informal actions of governmental employees, rather than an official government act. *See id.*; *see also Moore ex rel. Benton Cnty. v. Renick*, 626 So. 2d 148, 153 (Miss. 1993) (rejecting equitable estoppel argument based upon unauthorized advisory opinion of an ethics panel). The district court properly rejected Appellants' equitable estoppel argument  because Appellants have not shown the existence of an official government action prior to denial of the permit. The unofficial representations of certain city employees cannot form the basis of an equitable estoppel claim under Mississippi law. *Suggs*, 470 So. 2d at 1057; *Renick*, 626 So. 2d at 153.

In sum, the district court properly concluded that Appellants' substantive due process claims cannot survive summary judgment.

**B. Equal Protection**

Appellants also allege that the City's denial of their building permit violated their rights under the Equal Protection Clause of the Fourteenth Amendment. As the district court recognized, Appellants allege a "class of one" equal protection claim, as they contend that Mayor Warr singled them out for different treatment because of his personal animus against their business and his own economic motives.

It is well established that "[a] violation of equal protection occurs only when the government treats someone differently than others similarly situated." *Nat'l Fed. of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 214 (5th Cir. 2011). The Supreme Court has "recognized successful equal protection claims brought

by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). An equal protection challenge to a municipality's permitting decision requires a plaintiff to "show that the difference in treatment with others similarly situated was irrational." *Mikeska*, 451 F.3d at 381; *see also Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386 (5th Cir. 2008) (holding that *Mikeska* applies to plaintiffs' equal protection claim based upon allegations that the city council refused to grant plaintiffs a car dealer license while granting licenses to others similarly situated, without a rational basis).

The district court granted summary judgment on Appellants' equal protection claim because they failed to show the existence of similarly situated entities. Appellants argue that a facility called Grass Lawn was "similarly situated," as its reconstruction permit was approved even though it was submitted three years after the structure was destroyed. The district court concluded that the Grass Lawn project was not similarly situated, as the application for the project involved a "non-conforming use," not a "non-conforming structure," and the one year limit at issue is applicable only to "non-conforming *structures*."

We agree with the district court that the Grass Lawn project is not "similarly situated," but for a different reason. The Grass Lawn property is not "similarly situated" because the record demonstrates that it is a recreational rather than commercial structure. A letter from architect Frank Genzer to the City of Gulfport Planning Commission explains that Grass Lawn is "listed on the National Register of Historic Places," and that reconstruction "of this iconic building on its original site will re-establish its use as a museum, providing

educational tours and lectures, as well as a location for community receptions."[4] Ordinance 2482 and its one-year limitation period applies by its own terms only to "structure[s] of commercial use." The Grass Lawn historical and recreational structure is not similarly situated to Appellants' proposed nightclub. A better comparator would be another nightclub, bar, or commercial establishment whose permit was approved despite being untimely. Appellants have no evidence of any such entity.

As Appellants have failed to demonstrate the existence of others "similarly situated," summary judgment on their equal protection claim was proper.

## C. Discovery Issue

Finally, Appellants take issue with the district court's handling of discovery in this litigation. This court "review[s] a district court's discovery rulings, including the denial of a motion to compel, for abuse of discretion." *Wiwa v. Royal Dutch Petroleum Corp.*, 392 F.3d 812, 817 (5th Cir. 2004). "We will affirm such decisions unless they are arbitrary or clearly unreasonable." *Id.* (internal quotation marks omitted). Thus, "[a] trial court's decision pertaining to discovery should be reversed only in an unusual and exceptional case." *Unger v. Taylor*, 368 F. App'x 526, 535 (5th Cir. 2010) (citing *O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 499 (5th Cir. 1985)) (internal quotation marks omitted); *see also Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009) ("[A] district court's discretion in discovery matters will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse."). Further, we will "disregard a district court's discovery error unless that error affected the substantial rights of the parties." *Marathon*, 591 F.3d at 469 (internal quotation marks omitted). When contesting a discovery issue, "[t]he burden of providing substantial error and prejudice is upon the appellant." *Id.*

---

[4] Appellants describe Grass Lawn as "essentially a wedding chapel that the City rented out commercially." The available evidence does not support this characterization.

No. 11-60148

Appellants argue that the district court erred when it granted Appellee's summary judgment motion without ruling on Appellants' two motions to compel discovery, despite having granted Appellants' motion under former Federal Rule of Civil Procedure 56(f) to seek additional discovery before responding to a previous summary judgment motion.[5] One motion to compel sought a response to interrogatories, requests for production, and requests for admission, and another sought to re-depose City employee Michael Edwards. Appellants filed the motion after Mr. Edwards allegedly told Mr. Bush and Mary Wood (of GCW) that he had mispoken at his first deposition, and would gladly discuss the political nature of the permitting process if re-deposed.

We conclude that Appellants waived the issue of inadequate discovery by failing to seek relief under Rule 56(f). Although Appellants contend that the district court should have taken up their motions to compel, "particularly after having granted a Rule 56(f) motion," the record reflects that no Rule 56(f) relief was ever filed with respect to the pending motion for summary judgment. Rather, Appellants sought relief under Rule 56(f) when they were confronted with an earlier summary judgment motion in July 2008. In that motion, they explained that they required "the deposition testimony of the Mayor, the Mayor's father, and certain officers and employees of the City's Planning and Zoning Department." The district court granted that Rule 56(f) motion, and denied the summary judgment motion without prejudice in February 2009. Appellants did not seek relief pursuant to former Rule 56(f) when faced with Appellee's June

---

[5] In 2007, Federal Rule of Civil Procedure 56(f) provided: "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." FED. R. CIV. P. 56(f) (2007). Rule 56 was amended in 2010, and the advisory committee notes to the 2010 amendments state that "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." FED. R. CIV. P. 56(d) advisory committee's note.

2010 motion for summary judgment. While Appellants sought one extension to respond to the pending summary judgment motion, it was only to incorporate an "additional affidavit of an important witness" into the response, and not to include any other discovery. This affidavit was ultimately included in the response that Appellants filed on July 8, 2010. Appellants' failure to seek relief under Rule 56(f) constitutes waiver. We have consistently held that a party "waive[s] the issue of inadequate discovery" when it fails to seek relief under Rule 56(f). *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999); *see Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 492 n.13 (5th Cir. 2010) ("Though appellants also claim they were afforded insufficient discovery, they failed to move for relief under Federal Rule of Civil Procedure 56(f) and therefore have waived this argument on appeal."); 27A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 62:645 (3d ed. 2011) ("Failure to file a FED. R. CIV. P. 56(f) motion is itself a sufficient ground to reject a claim that discovery was inadequate, and is also a factor favoring the granting of summary judgment to the movant."). Simply put, Appellants cannot fault the district court for not allowing them additional time to conduct discovery when they did not seek such relief in the first place. *See Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996) ("If [the plaintiff] needed more discovery in order to defeat summary judgment, it was up to her to move for a continuance pursuant to rule 56(f). Because she did not, she is foreclosed from arguing that she did not have adequate time for discovery.").

Even if Appellants' argument were considered on the merits, the record demonstrates that the district court did not abuse its discretion. Assuming for the moment that the district court erred in granting Appellee's summary judgment motion in September 2010 without ruling on the motions to compel discovery or otherwise resolving discovery disputes between the parties, it corrected this error when it vacated its order and final judgment, so that the

case could be resolved on the merits and the issues could be reconsidered "with the benefit of Plaintiffs' additional evidence." Although the district court provided Appellants with an additional opportunity to defeat the summary judgment motion, they made no filings in the nearly three month period between the November 22, 2010 reconsideration order and the district court's February 7, 2011 order granting Appellee's summary judgment motion. Appellants did not, for example, file supplemental briefs, re-urge their motions to compel discovery, seek sanctions for failure to comply with discovery requests, or take any other steps to obtain the additional discovery that they now claim to have been denied. The onus was ultimately on Appellants to seek the court's assistance in addressing Appellee's recalcitrance, and there is no evidence that Appellants attempted to do so in the period leading up to the court's February 2011 summary judgment order.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.