# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2021

Lyle W. Cayce
Clerk

No. 20-20181

Vivian Wilhite,

*Plaintiff—Appellant*,

*versus*

Christina Harvey; Katina Rice; Deborah Kimmel; Kiara Hewitt-Saffold,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-866

Before Clement, Haynes, and Wilson, *Circuit Judges*.

Per Curiam:*

In connection with the revocation of her licenses to run a child-care facility, Vivian Wilhite sued several state officials—Christina Harvey, Katina Rice, Deborah Kimmel, and Kiara Hewitt-Saffold (collectively, "Defendants") in the operative complaint—alleging causes of action under

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20181

42 U.S.C. § 1983, among others, based upon her claim that their inspections of her facility violated her constitutional rights.[1] The district court dismissed Wilhite's claims for failure to state a claim. We AFFIRM.

Per the operative complaint, Wilhite owned and operated Royal T Child Development Center ("Royal T"), a child-care facility in the Houston area. Like all child-care facilities in the state of Texas, Royal T was subject to a range of licensing requirements, including maintaining safe conditions for the children in its care. *See generally* TEX. HUM. RES. CODE ANN. §§ 42.041–.067; 26 TEX. ADMIN. CODE chs. 745, 746 (formerly codified at 40 TEX. ADMIN. CODE chs. 745, 746). Failure to comply with those requirements could result in the revocation of Wilhite's licenses to run the facility. *See generally* TEX. HUM. RES. CODE ANN. § 42.072(a).

On a number of occasions in 2015 and 2016, inspectors from the Child Care Licensing Division of the Texas Department of Family and Protective Services,[2] allegedly working on authorization from Harvey and direction from Rice, inspected Royal T. They documented a range of deficiencies.

---

[1] Wilhite originally also sued the Texas Department of Family and Protective Services, which asserted sovereign immunity, as well as various other officials. Those defendants are not named, however, in her Second Amended Complaint, the relevant pleading. She also requested dismissal of her claims against Kimmel in her response to the motion to dismiss at issue here. Thus, the remaining defendants at issue are Harvey, Rice, and Hewitt-Saffold. The operative complaint also eliminated the state law causes of action, leaving only the Section 1983 claims based upon the alleged federal constitutional violations.

[2] At all times relevant to this case, the Child Care Licensing Division was part of the Texas Department of Family and Protective Services. *Cf.* Act of May 31, 2017, 85th Leg., R.S., ch. 316, § 24(c), sec. 531.02013, 2017 Tex. Sess. Law Serv. 601, 608 (West) (to be codified at TEX. GOV'T CODE ANN. § 531.02013). Although the division has since become part of the Texas Health and Human Services Commission, its functions relevant to this case—including, specifically, inspecting child-care facilities and reviewing licenses—have remained the same. *Id.*

No. 20-20181

Some deficiencies related to the quality of services provided, including, among other violations, that staff at the facility did not know the ages of children in their care. Others concerned potentially serious physical risks: most significantly, allowing an individual with a criminal history to be at the facility without a risk assessment and failing to get a required fire inspection. On the basis of these alleged deficiencies, the Child Care Licensing Division notified Wilhite that it would revoke her licenses. The State Office of Administrative Hearings ("SOAH") conducted a hearing on the matter, ultimately upholding the Child Care Licensing Division's decision to do so. *See* TEX. HUM. RES. CODE ANN. § 42.072(b).

Wilhite eventually filed suit in federal district court. Her operative complaint under Section 1983 alleged that Defendants abused legal process in connection with the inspections and maliciously used false evidence against her, primarily in violation of her Fourteenth Amendment due process rights.[3] Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the district court granted on the grounds that Wilhite's largely conclusory allegations were insufficient to state any constitutional claim. Wilhite timely appealed.

The district court had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291. We review the district court's dismissal de novo, applying the same standard as the district court. *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009). To resist dismissal under that standard, the plaintiff must

---

[3] Wilhite also claimed that Defendants' conduct violated her Fourth Amendment right against unreasonable searches and seizures. But Wilhite does not so much as cite the Fourth Amendment on appeal, so we consider that aspect of her claims abandoned. *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1067 (5th Cir. 1996).

allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The allegations must be more than speculative; "mere conclusory statements [ ] do not suffice." *Id.* (quotation and citation omitted).

All of Wilhite's arguments on appeal boil down to an assertion that she adequately stated due process claims before the district court. Although Wilhite's operative complaint does not clearly articulate whether her due process claims are procedural or substantive, we agree with the district court that she failed to allege a claim under either analysis.

As to procedural due process, the question is notice and an opportunity to be heard in connection with the revocation of her licenses. *See Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 (5th Cir. 2007) (acknowledging that an adequate remedy requires "notice and an opportunity for a hearing to the property owner"). Where, as here, a plaintiff has alleged that the initial deprivation of her interest deviated from established state procedures, our inquiry focuses on the adequacy of post-deprivation process afforded to the plaintiff. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Collins v. King,* 743 F.2d 248, 252 (5th Cir. 1984); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982). On that score, Wilhite plainly received enough process to satisfy constitutional standards. Wilhite's claims fail because the face of her pleadings and Texas law demonstrate the availability of administrative review. She was entitled to—and in fact received—an administrative hearing from SOAH to evaluate the propriety of the revocation of her licenses. *See* Tex. Hum. Res. Code Ann. § 42.072(b). She also had the opportunity to seek judicial review of that SOAH decision. *See id.* Beyond a lone conclusory assertion that the review she experienced was unconstitutional, Wilhite's operative complaint

does not allege that any of those opportunities were procedurally inadequate in any way.[4]  Accordingly, her procedural due process claims fail.

As to substantive due process, Wilhite's claims fail because she does not plausibly allege any conduct that "shock[s] the contemporary conscience." *Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016) (internal quotation marks and citation omitted).  The crux of Wilhite's argument on appeal is that her substantive due process rights were violated because Rice, a licensing supervisor at the Child Care Licensing Division, allegedly ran a competing child-care facility and was therefore hoping to run Wilhite out of business.

Wilhite's allegations about Rice are largely conclusory,[5] and, as the district court noted, Wilhite concedes the validity of a number of the identified deficiencies.  *See Bush v. City of Gulfport*, 454 F. App'x 270, 277–78 (5th Cir. 2011) (per curiam) (concluding that allegations that a mayor denied a building permit to further the mayor's economic interests were insufficient to support a substantive due process claim); *Greenbriar Vill., L.L.C. v. Mountain Brook*, 345 F.3d 1258, 1264 (11th Cir. 2003) (per curiam)

---

[4] In her appellate briefing, Wilhite suggests that the SOAH proceedings were deficient because, she asserts, the Administrative Law Judge who held the hearing was not the same Administrative Law Judge who produced written findings of fact and conclusions of law.  But Wilhite provides no such allegations in her operative complaint, so we do not address them.  *See Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004).  Indeed, to the contrary, her operative complaint alleged that a single individual, "Dana Perez," heard the administrative review and ruled against her.

[5] To the extent Wilhite seeks to buttress the operative complaint with statements from her response to Defendants' motion to dismiss before the district court, her attempt to do so fails.  New factual allegations in briefs are not appropriately considered on a motion to dismiss—our focus is on the allegations and materials referred to in the complaint itself. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (noting that a court must limit its inquiry to the complaint, documents attached to the complaint, and judicially noticeable facts), *cert. denied*, 140 S. Ct. 2506 (2020) (mem.).

No. 20-20181

(noting that allegations of "target[ing] . . . out of animosity" are insufficient to state a substantive due process claim when the state actor's conduct was also self-evidently justified by a legitimate interest).[6]

Even assuming arguendo that the allegations about Rice's business were more fulsome and, therefore, demonstrate a bias against Wilhite, there is no indication that Rice was ever involved in actually identifying deficiencies at Royal T. Other Defendants conducted the inspections, and Wilhite's operative complaint does not plausibly allege that Rice's alleged business interest caused those Defendants to act improperly in the process. In fact, the operative complaint says nothing at all about any of those Defendants being biased in any way—through Rice or otherwise. More critically, her complaint does not plead that the most significant defect in Wilhite's business (the presence of a person with a criminal background and no appropriate background check) was untrue. Thus, there are no actual facts pleaded that would support a reasonable jury finding that the documented deficiencies were the result of an improperly motivated investigation, let alone one that shocks the conscience.

AFFIRMED.

---

[6] Perhaps recognizing that Rice's alleged business interest is insufficient to shock the conscience, Wilhite repeatedly tries to recast Rice as a "biased judge" whose alleged partiality, or appearance thereof, affected the proceedings against Wilhite and Royal T. It is plain, however, that Rice works as a licensing supervisor—not as a judge. Wilhite does not cite a single case holding that the appearance of partiality (or, indeed, actual lack of impartiality) on the part of such an officer can form the basis of a viable due process claim absent some other form of conscience-shocking conduct. Nor are we aware of any such authority; after all, we generally review an executive officer's enforcement decisions with reference to "objective factors, rather than subjective intent." *Kentucky v. King*, 563 U.S. 452, 464 (2011); *cf. Bush*, 454 F. App'x at 277–78 (rejecting a substantive due process claim in part because the decisionmaker was justified by objectively legitimate state interests); *Greenbriar Vill.*, 345 F.3d at 1264 (same).