United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2006

Charles R. Fulbruge III
Clerk

REVISED JUNE 9, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 04-41147

———————————————

WAYNE MIKESKA; JANICE MIKESKA; MOSE SMITH;
CAROL SMITH,

Plaintiffs - Appellants,

versus

CITY OF GALVESTON; et al.,

Defendants,

CITY OF GALVESTON

Defendant - Appellee.

———————————————————————————————

Appeal from the United States District Court
For the Southern District of Texas, Galveston

———————————————————————————————

Before HIGGINBOTHAM, BARKSDALE, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The petition for panel rehearing is DENIED. The prior opinion, *Mikeska v. City of Galveston*, 419 F.3d 431 (5th Cir. 2005), is WITHDRAWN, and the following opinion is substituted:

This appeal arises from the dismissal, on summary judgment, of the appellants' suit against the City of Galveston for its refusal to grant permits for reconnection of the appellants' homes to

1

utility services after Tropical Storm Frances. We vacate the lower court's ruling and remand for further proceedings.

I.

The Texas Open Beaches Act ("OBA") was passed in order to protect the public's right for "free and unrestricted" access to state-owned beaches. TEX. NAT. RES. CODE ANN. § 61.011(a). The OBA safeguards the public's common law easement for access to the "public beach"—defined by the OBA as consisting of the area between the line of vegetation and the mean low tide line. § 61.001(8). Due to shifts of the vegetation line and the erosion of the shoreline, the natural demarcation lines are not static. To prevent destruction of the public beach from a landward shift of the mean low tide line, the legal boundaries of the public easement change with their physical counterparts. *Feinman v. State*, 717 S.W.2d 106, 110–11 (Tex. App. Ct. 1986).

The OBA makes it "an offense against the public policy of this state for any person to create, erect, or construct any obstruction, barrier, or restraint that will interfere . . . [with the right of the public] to enter or to leave any public beach." § 61.013(a). Texas empowers the Texas General Land Office ("GLO") to both "strictly and vigorously enforce the prohibition against encroachments on and interferences with the public beach easement," and to "promulgate rules" to enforce the OBA's public beach protections. § 61.011(c), (d). The OBA also requires local municipalities to design plans to protect access to public beaches that are within their respective jurisdictions. § 61.015(a).

Wayne and Janice Mikeska and Mose and Carol Smith (collectively "appellants") own separate beachfront rental properties in the Bermuda Beach subdivision of Galveston, Texas. Until 1998, when Tropical Storm Frances hit the coast of Texas causing erosion of the vegetation line, these homes were landward of the public beach. After Frances, the appellants' homes were entirely

2

seaward of the vegetation line—*i.e.*, the homes were completely situated on the public beach as defined by Texas law. Along with 105 other houses that were also fully positioned on the public beach, the appellants' properties were placed on the GLO's 100% List.[1] The 100% List was submitted to the Texas Attorney General to decide whether the listed homes should be removed.

The City of Galveston ("City") then condemned the appellants' homes, disabling a number of important utilities including electricity, sewer, and water services. Although the Attorney General concluded that the appellants' homes did not require removal, his office notified the appellants by letter that it was deferring any questions as to the reconnection of utilities services to the City. The appellants submitted a number of requests for the reconnection of their electricity, water, and sewer lines. As to the sewer lines, the appellants requested connection to the City's newly constructed line built through the Bermuda Beach subdivision. The appellants' requests, along with those from five others whose homes also are located in Bermuda Beach,[2] were rejected.

The appellants subsequently filed suit in federal court seeking both a preliminary injunction to force the City to allow the restoration of utility services and compensatory damages. The district court granted the preliminary injunction request, and the appellants pursued their suit for money

---

[1] The 100% List consisted of 107 homes on the Texas coast that, after Frances, were 100% seaward of the natural vegetation line and therefore considered encroachments on the public beach.

[2] The other five homeowners filed a separate suit, which was ultimately dismissed by Judge Kent, who was also the presiding judge for this action. *See Korndorffer v. City of Galveston*, No. G-02-144 (S.D.Tex. July 9, 2002) (unpublished).

damages, averring that the City violated their substantive due process and equal protection rights under the color of state law in violation of 42 U.S.C. § 1983.[3]

On the City's motion for summary judgment, the district court dismissed the complaint. According to the district court, the City's actions were rationally related to the protection of open access to the public beach (substantive due process) and to the City's obligation to follow state law to "protect the public beaches from interference" (equal protection). The appellants filed this timely appeal.

II.

The appellants challenge two related rulings of the district court. They argue that neither the City's persistent denial of the appellants' requests for utility connections nor its differential treatment of appellants' homes vis-a-vis similarly situated houses was rationally related to any legitimate governmental interest. "Whether a particular zoning action has the requisite rational relationship to a legitimate government interest is a question of law," *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 172 n.6 (5th Cir. 1996), the district court's determination of which is reviewed *de novo*. *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000). Each claim is discussed in turn.

A.

To succeed on a substantive due process claim, a plaintiff must cross two hurdles. First, he must allege a deprivation of a constitutionally protected right. *Simi*, 236 F.3d at 249. The district court held that the appellants have a constitutionally protected right in their homes and in access to public utility services, a decision that the City does not seek to disturb on appeal. Thus, the precise

---

[3] The appellants also brought a takings claim, which the district court dismissed. That decision is not appealed.

issue here, and the second and last prong of the substantive due process test, is whether the governmental action was "rationally related to a legitimate governmental interest." *Id.* (quoting *FM Props.*, 93 F.3d at 174) (internal quotations omitted).

The City and appellants dispute the scope of the City's duties under state law. The City contends that it has a legitimate governmental interest in following its obligations under state law. Its actions were related to this interest, the City argues, in that the OBA is designed to protect access to the public beach, the GLO has promulgated rules for the enforcement of the OBA, and the City and the GLO generally cooperate on matters related to the protection of the public beach. TEX. NAT. RES. CODE ANN. § 61.013; 31 TEX. ADMIN. CODE § 15.3; *see also* Application for City of Galveston Beachfront Construction/Dune Protection Permit. The appellants challenge this assertion, contending that nothing in the OBA explicitly requires the denial of service permits in situations such as this.

State law does provide the City with an important role in the protection of the public beach. However, the City's obligations, under the relevant provisions of the Texas Administrative Code and the OBA, did not mandate that the City refuse to reconnect utilities to existing homes. Rather, the City's obligations under state law were limited to prohibiting "construction." The Texas Administrative Code prohibits local governments from

> issu[ing] any beachfront construction certificate authorizing construction landward of the public beach that functionally supports or depends on, or is otherwise related to, proposed or existing structures that encroach on the public beach, regardless of whether the encroaching structure is on land that was previously landward of the public beach.

31 TEX. ADMIN. CODE § 15.5(c)(2). The City emphasizes that this code section applies to any construction, even related to preexisting structures, to support its argument that it simply did not have the authority to reconnect the appellants's utilities. However, no "construction," defined as "[c]ausing

5

or carrying out any building, bulkheading, filling, clearing, excavation, or substantial improvement to land or the size of any structure," was necessary to reconnect utilities to a preexisting home. 31 TEX. ADMIN. CODE § 15.2(18). Indeed, the City's zoning code states that no beachfront construction certificate is needed for "routine repairs, maintenance and upkeep of existing structures." City of Galveston Zoning Ordinance § 29-90(a)(3). The City reconnected utility and sewer service to thirty homes that were similarly identified as encroachments on the public beach without running afoul of any explicit state law provisions. Therefore, the City had *at least some* authority under state law for deciding the disposition of permit requests.

Perhaps the City also had *some* authority to deny utility permits pursuant to its state law obligations to protect public beaches. However, in exercising that discretionary authority, the City must still conform to its constitutional obligations. *Cf. Mickens-Thomas v. Vaughn*, 321 F.3d 374, 386 (3d Cir. 2003) (noting, in a different context, that "[t]he possession of a discretionary component" fails to remove governmental action from "constitutional scrutiny"). Thus, the City actions must be rationally related to some other independent and legitimate interest.

The rational basis test requires not only a legitimate state interest, but also that the government action is rationally related to furthering that interest. There is indeed a legitimate state interest at stake—the protection of public access to the public beach—but, at this stage, the government fails to provide any rational reason why refusing to reconnect utilities to houses found on a public beach furthers the end of protecting public access to public beaches.

After further development of the record, facts may come to light that indeed serve to indicate that there was a rational basis for the government's action. For example, we might learn that reconnecting the utilities involved hanging obtrusive wires or placing unsightly water meters that

6

would discourage public use of the beach. However, there is no indication of such facts in the record at this summary judgment stage, and we decline to invent them. Thus, we find that the government's argument fails because there is nothing in the record before us to suggest that the connection of either the appellants' sewer system or their electricity and water lines to the City's service grid would hinder the public's access to the beach or otherwise serve as an impermissible encroachment under the OBA.

As the City argues, the "local government does not have to be right" in implementing the requirements of state law, nor may a plaintiff bootstrap violations of state law into the Constitution. The appellants' allegations implicate neither of these concerns, however. The City must conform its discretionary actions to its constitutional obligations; because the City has not demonstrated the requisite rational relationship to sustain a motion for summary judgment at this stage of litigation, we vacate the district court's determination as to the substantive due process claim.

B.

The appellants' equal protection claim is based on their contention that there are a number of other similarly situated homes that were allowed reconnection of their utility services. In contrast to a due process action, which looks solely to the government's exercise of its power vis-a-vis the appellants, an equal protection claim asks whether a justification exists for the *differential* exercise of that power. To bring such an equal protection claim for the denial of zoning permits,[4] the appellant must show that the difference in treatment with others similarly situated was irrational. *Vill. of*

---

[4] Contrary to the City's contention, the appellants' equal protection cause of action does not sound in two other types of "class of one" claims: "selective enforcement," *Allred's Produce v. United States Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999), and "personal vindictiveness." *See Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995); *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000) (citing *Esmail,* 53 F.3d). We thus reject the City's contention that we must apply the higher evidentiary burden that would normally be required by either claim.

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims ... where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

The City failed to offer any reason for the differential treatment of the appellants' homes in its brief. Although the City proffered two reasons at oral argument for its denial of the appellants' permit application, as a general matter we do not address newly minted arguments at oral argument. *See, e.g.*, *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1998). Furthermore, the fact that these reasons were raised for the first time at oral argument bolsters our view that they are merely *ex post facto* justifications for the City's irrational treatment.

The lack of identifiable reasons for the City's actions highlights the more general problem of the insufficiency of evidentiary support. The City's only proffered evidence consists of (a) Judge Kent's decision dismissing the similar complaint of other plaintiffs against the City, *Korndorffer v. City of Galveston*, No. G-02-144 (S.D.Tex. July 9, 2002) (unpublished), and (b) the City's motion in response to the appellants' injunction request. Neither of these constitutes a cognizable evidentiary source. Indeed, at oral argument the City conceded that it had failed to support its arguments with record evidence. This lack of evidentiary support is particularly acute with regard to the refusal to reconnect electricity and water services—the City posits no reason, let alone one supported by evidence, for how reconnection of those particular services interfered with access to the public beach.

C.

Although we are to resist becoming "super zoning boards," *S. Gwinnett Venture v. Pruitt*, 482 F.2d 389, 390 (5th Cir. 1973), "[w]e have plainly and consistently held that zoning decisions are to be reviewed by federal courts by the same constitutional standards that we employ to review statutes

8

enacted by the state legislatures." *Shelton v. City of Coll. Station*, 780 F.2d 475, 479 (5th Cir. 1986). Without supporting evidence for the City's rationales, we hold that summary judgment at this stage was improper.

III.

The decision of the district court is VACATED and REMANDED for further proceedings.

Patrick E. Higginbotham, Circuit Judge, concurring in part and dissenting in part.

I concur in all respects, except that I would affirm the district court's grant of summary judgment dismissing the substantive due process claim. To my eyes, the challenged state purpose is rational as a matter of law. I agree that the case must go forward on the challenge to the means of achieving the purpose of mandatory open beaches, the equal protection claim.