# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20688

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2015

Lyle W. Cayce
Clerk

TEXCOM GULF DISPOSAL, L.L.C.,

Plaintiff - Appellant

v.

MONTGOMERY COUNTY; COUNTY JUDGE ALAN B. SADLER; COUNTY COMMISSIONER MIKE LLOYD MEADER; COUNTY COMMISSIONER JAMES CRAIG DOYAL; COUNTY COMMISSIONER JAMES LEE NOACK; COUNTY COMMISSIONER ERNEST EDWIN CHANCE; COUNTY COMMISSIONER EDWIN EARL RINEHART,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2789

Before REAVLEY, PRADO, and COSTA, Circuit Judges.

PER CURIAM:[*]

We review *de novo* the district court's dismissal of plaintiff TexCom Gulf Disposal, L.L.C.'s ("TexCom") action alleging constitutional violations against Montgomery County and several county officials.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20688

## I.

TexCom desires to construct and operate a wastewater injection facility within Montgomery County and, more than a decade ago, applied for the necessary environmental permits.[1]  In 2011, despite the County's vigorous formal opposition, the Texas Commission on Environmental Quality ("TCEQ") approved TexCom's application and issued the associated permits.  The permits were contingent on TexCom's acquisition of Texas Department of Transportation ("TxDOT") permits providing for access to TexCom's property via a certain road, FM 3083.

TexCom's initial driveway access permit application was denied based on "spacing guidelines"—*i.e.*, the proposed driveway would be too near an already existing neighboring driveway.  This is a "common occurrence," merely requiring TexCom to seek a routinely granted variance.  TexCom applied for the variance and expected to receive it in due course.

County opposition continued.  In addition to appealing TCEQ's decision, various officials sought alternative methods of preventing TexCom's operations and realized barring TexCom's FM 3083 access would do the trick.  TxDOT rule 11.56 permits cities and counties to, upon request, "assume [permitting] responsibility," *see* Tex. Admin. Code § 11.56, and county officials sought to commandeer the permitting authority.  Officials described rule 11.56 delegation as a "tremendous opportunity" that "should not be missed."  Upon concluding they could return the power to TxDOT after denying TexCom's application and that they could also eliminate any right to appeal TexCom might otherwise have, officials resolved to seize the permitting power.

---

[1] As this case was decided following a Rule 12(b)(6) motion to dismiss, "facts" are drawn from the complaint and viewed in the light most favorable to TexCom.  *See Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015).

No. 14-20688

The County secured the permitting power in January of 2012. Even before then, officials began gloating they had found a way to prevent TexCom's operations. Per County Commissioner Mike Meador, delegation "gives us control of our destiny." County Attorney David Walker was even more explicit: "This will allow us to permanently deny access to TexCom along FM 3083 . . . We're on our way." Once the County obtained delegation, however, the County did *not* deny TexCom's pending variance request. Rather, "recognizing the inevitable outcome," TexCom withdrew its own application.

In an effort to avoid the permitting process altogether, TexCom decided to acquire adjacent property that already accessed FM 3083. A 3.5-acre tract of land owned by one Bryan Poage bordered both FM 3083 and TexCom's property (the "Poage Tract"). Moreover, it boasted a 45-foot-wide commercial driveway that had been very recently approved and constructed. TexCom seems to have overlooked a significant, facially evident limitation on the permit's transferability, however. The face of the Poage Tract permit read: "The State reserves the right to require a new access driveway permit in the event of a material change in land use or change in driveway traffic volume or vehicle types." Further, the application completed in connection with the Poage Tract permit indicated the "primary use for the property" was to be "Undeveloped Land," and the form noted immediately thereafter, in all-capital letters, "NOTE: ANY FUTURE DEVELOPMENT TO THIS SITE MUST BE REVIEWED AND APPROVED BY TxDOT, OR THIS PERMIT WILL BECOME NULL AND VOID."[2]

---

[2] While the motion to dismiss was pending, the district court ordered the parties to provide various documents relating to this litigation, including the Poage Tract permit and underlying application. TexCom did not object and provided the requested documents. The ordinary rule is that a motion to dismiss is converted to a motion for summary judgment where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). However, in the Fifth Circuit, trial courts may also consider "documents

No. 14-20688

After realizing the Poage Tract permit could conceivably be assumed by TexCom, Walker wrote a letter incorrectly asserting that the Poage Tract permit was *not* approved for commercial use. Subsequently, he publicly stated the County would seek to prevent TexCom from using the permit and "would not put up with any shenanigans." Despite these signals, TexCom acquired the Poage Tract as planned. Though the Poage Tract permit expressly authorizes a "commercial access driveway," Walker's successor, County Attorney, J.D. Lambright, continued to assert that commercial use of the driveway was unauthorized.

Thereafter, TexCom applied to the Montgomery County Engineer for the permit necessary to build a surface facility. Ultimately, the permit was denied because the TCEQ permits authorizing TexCom's planned facility was contingent on approved access to FM 3083. At that time, the County also asserted the changed use of the Poage Tract and its driveway required TexCom to seek a new driveway access permit.

TexCom sued. Once the district court became familiar with the facts of this case, particularly the fact that the County never actually denied TexCom any driveway permit application, it ordered TexCom to re-apply for the driveway and building permits. The County made clear that no building permit would be issued absent approved FM 3083 access and also informed TexCom that its driveway access application would be routed through TxDOT, the "usual practice" the County had settled upon since taking the permitting

---

attached to the motion to dismiss . . . that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). We first "approv[ed] of that practice" where, as here, "the plaintiffs did not object to, or appeal, the district court's consideration of those documents." *See id.* The parties have provided no briefing on this issue, and we assume (without deciding) that the "one limited exception" recognized in *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000), applies here.

power.  TexCom submitted the required applications in early 2014, but as alleged, "TexCom's driveway permit application replicated Bryan Poage's application in all substantive aspects."  "TexCom submitted the same technical data, drawings, and representations which the County previously approved in issuing the Driveway Permit."

On February 25th, the County denied TexCom's driveway permit application on the recommendation of TxDOT and for reasons provided by TxDOT.  According to TxDOT, TexCom's application was denied *because* it was a regurgitation of the Poage Tract application and was not a new application that accurately reflected the site to be accessed—a 30.5-acre tract, not a 3.5-acre tract.  Based on this denial, the County also denied TexCom's building permit application.

TexCom filed an amended complaint adding allegations regarding the newly denied permit applications.  Thereafter, Defendants filed a motion to dismiss, which was granted.  TexCom's rejected equal protection and substantive due process claims are the subject of this appeal.

II.

A class-of-one equal protection claim requires allegations that (1) the plaintiff "was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment."  *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007).  Successful class-of-one equal protection cases are typically marked by "the existence of a clear standard against which departures, even for a single plaintiff, [can] be readily assessed."  *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 602, 128 S.Ct. 2146, 2153 (2008).  It is usually upon this basis that courts identify "differential treatment" for which the state must provide a rational basis.  *See id.* at 603, 128 S.Ct. at 2154.

No. 14-20688

Here, three permitting decisions are at issue.[3]  First, the County refused to recognize TexCom's assumed Poage Tract permit *because* it concluded the permit was rendered null and void upon the change in land use.  TexCom has not alleged the existence of a single entity or individual that was allowed to retain the privileges of an "assumed" driveway access permit, let alone after a change in ownership accompanied by a radical change in land use.  Second, the County denied TexCom's driveway access permit application *because* the submitted application did not contain necessary information about the 30.5-acre tract and instead included maps reflecting a 3.5-acre tract.  TexCom has not alleged that the County has approved similarly deficient applications.[4]  Third, the County denied TexCom's building permit *because* of TexCom's failure to secure the driveway access permit, a rationale allegedly dictated by regulations precluding issuance of building permits where the applicant has not satisfied all other requirements.  While TexCom alleges that other applicants were not subjected to this intensive review and that the regulations cited to support denial of the building permits were "not applicable or even in effect," it does not identify these alleged other applicants or allege that the same regulations have been overlooked in other specific cases.  That is to say, we are not directed to a single building-permit applicant who received a building permit where other "unmet requirements" barred development.

---

[3] TexCom also asserts that the County's Rule 11.56 delegation constitutes an equal protection violation.  Specifically, TexCom argues that "[T]he County's seizure of driveway-permitting authority just to obstruct TexCom's operation epitomizes the type of discriminatory treatment that violates the Equal Protection Clause."  While the Rule 11.56 delegation might be *evidence* of an equal protection violation, it does not itself constitute differential treatment of TexCom and cannot be the *basis* of an equal protection claim.

[4] Moreover, the complaint indicates that TexCom's application was treated *precisely like all other applicants*—it was forwarded to TxDOT for review in accordance with the alleged "usual practice."  The documents reflecting the County's denial of the permit application indicate TxDOT, rather than the County, determined denial was proper.

No. 14-20688

TexCom complains about each of these permitting decisions but provides no basis upon which to infer the decisions represent a departure from the norm. *See Engquist*, 553 U.S. at 602, 128 S.Ct. at 2153.  TexCom has not alleged a plausible class-of-one equal protection claim.

III.

To state a substantive due process claim, the plaintiff "must allege a deprivation of a constitutionally protected right" via a governmental action that was not rationally related to any legitimate governmental interest. *Mikeska v. City of Galveston,* 451 F.3d 376, 379 (5th Cir. 2006).  We again review the three challenged permitting decisions.[5]  Assuming TexCom was deprived of a constitutionally protected right, we have no trouble identifying a rational basis for the County's actions.

The first permitting decision complained of, the County's refusal to recognize the "assumed" Poage tract permit, rationally follows from the associated change in land use.[6]  The County had approved driveway access to a 3.5-acre plot of land used to store mobile homes on "Undeveloped Land" and had a rational basis to require a new application when the driveway would instead access a 30.5-acre plot of land hosting a wastewater injection facility.

The second permitting decision complained of, actual denial of TexCom's driveway access permit application, is also supported by a straightforward rational basis—the application's facial deficiency.  Instead of filing a complete

---

[5] TexCom also argues "the County's decision to seize permitting authority" constitutes a substantive due process violation.  Delegation did not deprive TexCom of a protected right and is not plausibly the basis of a substantive due process claim.

[6] TexCom alleged it "proposed" no "change in land use."  (Emphasis omitted.)  It now argues that any contrary determination represents "an improper resolution of a factual dispute."  We "draw on . . . common sense" when considering a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009).  Transformation of a 3.5-acre tract dedicated to storage of mobile homes on "Undeveloped Land" into a 30.5-acre tract hosting a wastewater injection facility constitutes a material change.

application relating to the 30.5-acre tract, TexCom instead submitted a "driveway permit application [that] replicated Bryan Poage's application in all substantive aspects." Even the accompanying maps reflected a 3.5-acre tract of land rather than a 30.5 tract of land. It is hard to fathom why TexCom thought substantial replication was appropriate and easy to see why the application was denied.

The third permitting decision complained of, the County's denial of TexCom's building permit application, also had a clear rational basis. TCEQ conditioned its approval to *operate* the facility on driveway access to FM 3083. Accordingly, it is rational to impose the same condition on *construction* of that same facility. Otherwise, the County would be granting permission to construct a facility with no authorization to operate.

We have identified unproven but conceivable (and rather apparent) rational bases for the County's challenged actions. *See Shelton v. City of Coll. Station*, 780 F.2d 475, 479 (5th Cir. 1986) (*en banc*). It is true, as TexCom points out, that we "focus on what actually motivated the conduct" when adjudicative, rather than legislative, decisions are at issue. *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 934 (5th Cir. 1988). Even assuming the challenged permitting decisions were adjudicative, however, the complaint's allegations do not nudge TexCom's substantive due process claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

TexCom has adequately alleged the existence of animus by certain County officials toward TexCom's development project and even a plan, by those officials, to use the permitting power to thwart TexCom's operations within the County. TexCom has not plausibly alleged that the discrete decisions actually complained of were compelled by improper official animus rather than by TexCom's questionable maneuvering.

8

On its face, the Poage permit provides that "[t]he State reserves the right to require a new access driveway permit in the event of a material change in land use or change in driveway traffic volume or vehicle types." Indeed, the application completed in connection with the Poage Tract permit indicated the "primary use for the property" was to be "Undeveloped Land," and the form noted immediately thereafter, in all-capital letters, "NOTE: ANY FUTURE DEVELOPMENT TO THIS SITE *MUST BE REVIEWED AND APPROVED BY TxDOT, OR THIS PERMIT WILL BECOME NULL AND VOID.*" (Emphasis added.) TexCom's plan to "assume" the Poage Tract permit was ill conceived, and we cannot reasonably infer that animus actually motivated the County's refusal to recognize the "assumed" Poage Tract permit. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).

The same is true for the County's denial of TexCom's court-ordered driveway access permit application. We have already observed the deficiency of TexCom's submission. Further, according the complaint, the County "forwarded TexCom's application to TxDOT for review." This was the "usual practice" for all driveway access permit applications after rule 11.56 delegation went into effect, and the County took "no substantive role in the review" of applications so forwarded. Consistent with the system of review described by the complaint itself, documents representing the actual denial of TexCom's application indicate TxDOT made the substantive decision that the application should be denied. We cannot reasonably infer that the County's denial of TexCom's permit application was actually motivated by animus.

According to TexCom, "[t]he County further violated TexCom's due process rights by rejecting TexCom's building permit when one of the County's purported 'requirements'—[authorized] driveway access—depended upon an action that the County refused to take." We have found implausible allegations

No. 14-20688

that the County improperly thwarted TexCom's attempts to procure a driveway access permit.  This contingent theory is equally implausible.

IV.

TexCom failed to state a constitutional claim upon which relief could be granted.  The judgment of the district court is AFFIRMED.