# United States Court of Appeals for the Fifth Circuit

———————————

No. 24-30160

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

October 7, 2025

Lyle W. Cayce
Clerk

SAMANTHA HIGNELL-STARK; WHITE SPIDER RENTAL CONCIERGE, L.L.C.; RUSSELL FRANK; SAMANTHA MCRANEY; BOB MCRANEY; JIMMIE TAYLOR; KURT KLEBE; GARETT MAJOUE; ZACHARY BENNETT; SUMMIT NOLA III, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

CITY OF NEW ORLEANS,

*Defendant—Appellee*,

_____

KURT KLEBE, ZACHARY BENNETT,

*Plaintiffs—Appellants*,

*versus*

CITY OF NEW ORLEANS,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-13773, 2:22-CV-2991

_____

Before Elrod, *Chief Judge*, Jones, and Stewart, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Appellants are homeowners and rental-property supervisors in New Orleans. They challenge the City of New Orleans's regulation of short-term rentals ("STRs")—the City's term for lodging offered for less than thirty days. The City's regulations reduce the proliferation of STRs and control their use. A homeowner must obtain a permit to use a home as an STR, as must "operators," who must reside at the property and oversee guests. Once permitted, the City's scheme regulates what owners and operators may and must do, from their advertising to the required response time to neighbor complaints.

Many of the City's STR regulations fall squarely within its broad authority to regulate its neighborhoods. But some do not. We conclude that the STR scheme (1) prohibits "business entities" from obtaining an owner and operator permit in violation of the Equal Protection clause, (2) unduly restricts STR advertisements contrary to the First Amendment, and (3) prohibits out-of-state residents from obtaining and then maintaining an operator permit in violation of the dormant Commerce Clause. The district court's judgment is accordingly AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

I.

With the advent of online platforms like Airbnb and Vrbo, short-term rentals in cities large and small across the country have become ubiquitous. New Orleans is familiar with this phenomenon. Before these types of rentals became common, the City forbade property owners in residential neighborhoods from renting their homes for less than thirty days, or less than sixty days in the French Quarter.

In 2017, the City began to offer licenses for property owners to offer STRs, and a new licensing regime went into effect. One year later, a City commissioned study found that the rapid spread of STRs caused a host of deleterious consequences to local communities. For example, anecdotal evidence showed that transient guests cared little about the surrounding residential community during their stay—guests were loud, created trash, and threw parties. Without a permanent resident or owner present, STRs allegedly caused a "loss of neighborhood character." Anecdotal evidence from the study also revealed that the proliferation of STRs reduced the amount of affordable housing. As a result, the City revised and curtailed STR licensing in 2019. Among other requirements, the new regulations barred a homeowner from receiving a permit to use his property as an STR unless the property was the owner's primary residence.

Appellants challenged the City's 2019 regime and eventually came before this court. In *Hignell-Stark v. City of New Orleans (Hignell-Stark I)*, 46 F.4th 317, 326 (5th Cir. 2022), this court held that "the City d[id] not offer permits for STRs in residential neighborhoods unless the STR [was] 'located on the same lot of record as the owner's primary residence' . . . [and] only residents of the City [could] enter the market for STRs in residential neighborhoods." *Id.* The residency requirement therefore "discriminate[d] on its face against out-of-state property owners" when reasonable nondiscriminatory alternatives existed to advance the City's interest in "preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character." *Id.* at 326, 328. The court concluded that this discrimination violated the dormant Commerce Clause.

Following *Hignell-Stark I*, the City amended its City Code ("Code") and Comprehensive Zoning Ordinance ("CZO"), which together regulate STRs in New Orleans. The Code defines an STR as "the use and enjoyment of a dwelling unit, or any portion thereof, by guests for a period of

less than 30 consecutive days, in exchange for money, commodities, fruits, services, or other performances." The new regulations are comprehensive, from the "clean towels, washcloths, and bed linens" STRs must provide to the taxes and fees that must be remitted to the City. Three aspects of the regulations are relevant to the present appeal.

First, the Code's owner-permitting scheme regulates which homeowners may receive an STR permit. Permits are limited to homeowners who are "natural persons." "Ownership, in whole or in part, by a business entity . . . is prohibited."

Second, the Code's operator-permitting scheme requires that an "operator" reside at the STR. The City replaced the owner-residency requirement held unconstitutional in *Hignell-Stark I* with this "operator" requirement. Each STR must be "operated by a natural person . . . holding a short-term rental operator permit." The operator must supervise short-term residents and ensure compliance with the various requirements of the Code. To receive a permit, an individual must provide "evidence of recorded ownership or a current residential lease, as well as at least two other forms of documentation with a matching address . . . establishing that the operator resides on the premises being operated as a short-term rental." An operator has an independent legal duty to "[r]eside on the property being used for a non-commercial short-term rental."

Third, the Code's advertising restrictions regulate how STRs may be advertised and what the advertisements must include and exclude. Each STR advertisement may list only one dwelling unit and must include certain information like the owner and operator permit number, wheelchair accessibility, and the number of available guest bedrooms. The Code prohibits advertisements for non-permitted STRs and advertisements that

No. 24-30160

exceed the legally available STR density, guest bedroom, and occupancy limits.

Following the City's publication of its updated STR regulations, Appellants amended their complaint, and both parties moved for summary judgment. Appellants raised a variety of arguments under state-law, the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the dormant Commerce Clause to support their claim that the regulations are unconstitutional. The district court rejected Appellants' arguments on the systemic constitutionality of the regulations, save for one provision no longer at issue.

On appeal, Appellants contend that the district court erred for several reasons: (1) the City does not have the authority under state law to enact STR regulations; (2) the STR regulations violate the Due Process Clause because they (a) regulate the duration of use of property, (b) prohibit businesses from qualifying for an STR owner or operator permit, (c) cap the number of permits per city block, and (d) are based on allegedly questionable evidence; (3) the STR regulations violate the Equal Protection Clause because they (a) prohibit business entities from qualifying for an STR owner or operator permit and (b) discriminate among homeowners based on the length of time they rent out their property; (4) the advertising regulations violate the First Amendment; and (5) the operator-residency requirement violates the dormant Commerce Clause. We address each of these challenges in turn.

## II.

"A district court's judgment concerning a statute's constitutionality is reviewed *de novo*. To the extent relevant to the constitutional question, subsidiary facts are reviewed for clear error." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (citations omitted).

5

III.

A.

First, the City has the authority under state law to regulate STRs. In Louisiana, municipalities may regulate and restrict "the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes." La. Revised Stat. § 33:4721. Appellants argue this language does not permit the City to zone based on the duration of an individual's stay on a property. But the STR ordinances plainly fall within the City's broad authority to regulate the "use of [a] . . . residence" for short-term rentals, which are defined temporally by the length of a guest's stay. *Id.*; *see also Deslonde v. St. Tammany Parish*, 391 So.3d 706, 716 (La. App. 1st Cir. 2024). Appellants cite no authority to support their counter-textual interpretation of the statute. Instead, "[i]t is well settled that the City has the authority to initiate legislation and enforce zoning ordinances" for short-term rentals. *Chaumont v. City of New Orleans*, 302 So.3d 39, 53 (La. App. 4th Cir. 2020). The City may regulate STRs under state law.

B.

Second, Appellants have not established a protected property interest necessary for their due-process claims. To prevail under the Due Process Clause, Appellants must first "allege a deprivation of a constitutionally protected right." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). "The Constitution does not create property interests; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)). "The nature of the property interest therefore must be determined by [Louisiana] law." *Simi Inv. Co., Inc. v. Harris County*, 236 F.3d 240, 250 (5th Cir. 2000).

Appellants have not met their burden to show that they held a constitutionally protected property right under Louisiana law implicated by the permitting scheme.

Appellants assert "the fundamental right to lease their private homes." But they cannot rely on an alleged fundamental right to engage in STRs. Even though such a property right exists as an essential incident of home ownership, *see, e.g.*, *Terrace v. Thompson*, 263 U.S. 197, 215, 44 S.Ct. 15, 17–18, 68 L.Ed. 255 (1923), Louisiana courts reasonably view short-term rentals with transient guests as a commercial use of property distinct from a traditional residential lease. *See Deslonde*, 391 So.3d at 716 ("[T]he act of renting property on a short-term basis is a strictly commercial use."); *Edwards v. Landry Chalet Rentals, L.L.C.*, 246 So.3d 754, 758 (La. App. 2d Cir. 2018); *Craig v. City of New Orleans Bd. of Zoning Adjustments*, 903 So.2d 530, 537 (La. App. 4th Cir. 2005) (describing stays on a nightly or weekly basis, rather than monthly, as "fully commercial lodging, catering exclusively to tourists visiting New Orleans for very short periods of time"). Renting a home to transient guests is more analogous to a hotel operation than a traditional residential lease. *Compare Craig*, 903 So.2d at 537, *with Terrace*, 263 U.S. at 211–12, 44 S.Ct. at 16. Because renting a home for mere days or weeks is not a residential lease under state law, reliance on an alleged "right to lease" is misplaced.

Appellants elsewhere argue they "want to use their existing homes for the residential use they are already zoned for." But they make no attempt to show that a commercial short-term rental has ever been recognized as a permissible "residential" use in Louisiana. Before 2017, it was categorically unlawful to rent a residential home in the city for fewer than thirty days (or fewer than sixty days in the French Quarter). Before the permitting scheme at issue was enacted, Appellants had no right to operate their properties as an STR. The current iteration of the CZO makes this clear because nothing

"shall be construed to authorize the continued use of any property as a short term rental in the event the City modifies its short-term rental permitting regulations in a manner that limits or prohibits the issuance of a short-term rental permit." Thus, Appellants' premise for claiming a constitutionally protected property interest is false; residential homes are not "already zoned for" short-term usage.

We do not doubt that, properly framed, a homeowner may be able to articulate a constitutionally protected property interest implicated by the City's zoning ordinance. *See City of New Orleans v. Elms*, 566 So.2d 626, 632 (La. 1990). But that situation is distinguishable because Appellants essentially claim a right to operate an unlicensed commercial business from their homes. *See Chaumont*, 302 So. 3d at 53 ("[O]perating a short-term rental is a privilege, not a right."). Because Appellants have not alleged a protected property interest under Louisiana law, their due-process claims fail.

## C.

Third, Appellants contend that the ordinances violate the Equal Protection Clause because they irrationally prohibit business entities from receiving an owner or operator permit.[1] The Code specifies that "[o]nly natural persons . . . may own a property used as a non-commercial short-term rental. Ownership, in whole or in part, by a business entity . . . is prohibited." The Code further defines an "operator" as "a natural person possessing a short-term rental operator permit." We agree that the permitting

---

[1] Appellants' second equal-protection argument—that the ordinances unconstitutionally discriminate between people "who want to lease their private homes for less than thirty days" and those "who rent for thirty-one days, or more"—was raised untimely in the district court and is therefore not properly before this court. *Bailey v. Ramos*, 125 F.4th 667, 679 n.42 (5th Cir. 2025) (citation omitted).

restrictions on both owners and operators violate the Equal Protection Clause.[2]

To establish an equal-protection claim, Appellants must first prove that "similarly situated individuals were treated differently." *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020) (citations omitted). "Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Id.* at 272–73 (quoting *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 932 (5th Cir. 1988)). To determine whether disparately treated groups are similarly situated, a court must consider "the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant" when making the classification. *Stratta v. Roe*, 961 F.3d 340, 360 (5th Cir. 2020). Further, the "plaintiff's and comparators' relationships with the ordinance at issue will generally be a relevant characteristic for purposes of the similarly-situated analysis." *Id.* (citation omitted).

Natural persons and business entities are equated for purposes of the Equal Protection Clause. In federal law, the term "person" includes "corporations, companies, associations, firms, partnerships, societies and joint stock companies, as well as individuals." 1 U.S.C. Sec. 1 (the Dictionary Act). Louisiana law recognizes two types of persons: natural and juridical. LA. CIV. CODE art. 24. Juridical persons include any kind of business or other legally recognized association. *Id.*; *see also Wimsatt v. Jaber*, No. 24-30366, 2025 WL 711120, at *4 (5th Cir. Mar. 5, 2025) (describing a

---

[2] The district court also held that these provisions are irrational to the extent they prohibit individuals who possess usufructuary or trust beneficiary status from obtaining owner permits for STRs. The City did not cross-appeal this point.

partnership as a juridical person under Louisiana law that is "distinct from its partners" (quoting LA. CIV. CODE. art. 2801)); *Ogea v. Merritt*, 130 So.3d 888, 894–95 (La. 2013) ("Therefore, as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons."). But juridical persons have legal "personality." LA. CIV. CODE art. 24.

Yet, the City's homeowner-permit requirement initially discriminates against business entities that own homes by preventing them from being licensed for STRs. Even absent a corporate form, Louisiana permits property to be jointly owned by multiple individuals. *See, e.g.*, *Deklerk v. Deklerk*, 174 So.3d 205, 209 (La. App. 4th Cir. 2015). Nothing suggests that Appellant Summit NOLA III LLC, a two-member limited liability corporation that owns a home in New Orleans, is meaningfully different from two individuals who own a home jointly. A corporation or business entity "is simply a form of organization used by human beings to achieve desired ends." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706, 134 S.Ct. 2751, 2768 (2014). Business homeowners and natural-person homeowners are similarly situated.

Likewise, the City's operator-permit scheme discriminates between two classes of prospective operators. Both a business that operates through "human beings to achieve desired ends" and a natural person may seek to provide the same STR "operator" service, in the same community, under an otherwise identical set of regulations. *Id.* at 706, 134 S.Ct. at 2768. The legal identity of the operating permitholder does not change the permitholder's relationship to the regulations' various requirements. *See Stratta*, 961 F.3d at 360. These classes are similarly situated for purposes of the Equal Protection Clause.

The business bans can therefore be upheld only "'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Greater Hou. Small Taxicab Co. Owners Ass'n v. City of Houston*, 660 F.3d 235, 239 (5th Cir. 2011) (quoting *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642 (1993)). But a "necessary corollary to and implication of rationality as a test is that there will be situations where proffered reasons are not rational." *Id.* (internal quotation omitted). For example, "the relationship of the classification to its goal [may be] so attenuated as to render the distinction arbitrary or irrational." *Stefanoff v. Hays County*, 154 F.3d 523, 526 (5th Cir. 1998). "[W]e have made clear that 'rational' still must be actually rational, not a matter of fiction." *Hines*, 982 F.3d at 273 (citations omitted). To that end, "we will examine the State['s] rationale informed by the setting and history of the challenged rule." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013). While the City bears no burden under rational-basis review, there must be *something* to suggest that the business ban is rationally related to the City's legitimate interests or to allow the court to create a rational post hoc justification for the regulation. *See Mikeska*, 451 F.3d at 381.

Turning to the City's justifications for discriminatory treatment, it rests on this: a "concern for livability and quality of life in residential neighborhoods forms the essential, rationally conceivable basis for the natural person requirement." The City's research noted "accounts of large parties all through the day and night inside and outside of STRs," and increased "noise [and] trash" associated with STR guests. A municipality's concern for its residential neighborhoods is legitimate. *See Nordlinger v. Hahn*, 505 U.S. 1, 12, 112 S.Ct. 2326, 2333 (1992) (noting "legitimate interest[s] in local neighborhood preservation, continuity, and stability"). And there is a legitimate basis to regulate the deleterious effect on residential neighborhoods caused by transient guests. But the City's legitimate concern

with the effect of property *guests* says nothing about property *owners* or how the legal identity of the homeowner will ameliorate issues caused by transient guests.

The Code does not ban "businesses" from owning homes in residential neighborhoods. It bans homes *already* owned by a "business entity" from receiving an STR permit. Our inquiry therefore turns on whether there is a rational basis to suggest that allowing STRs at a property owned by a natural person affects the "livability and quality of life in residential neighborhoods" differently from STRs at a property owned by a natural person through a business entity. "[T]here is nothing in the record before us to suggest" such a conclusion. *Mikeska*, 451 F.3d at 381. Nothing suggests that having a juridical person as *homeowner* will adversely affect the operation of the STR, either by itself or in comparison with a natural-person homeowner. In fact, for many individual homeowners who desire to engage in STRs, the only practical way to do so may be through the formation of a juridical entity as a liability shield. Creating a business entity erects a paper barrier, albeit an important one, while compliance with the City's regulations still resides with one person or small group. Moreover, under the Code, a defining characteristic of a short-term rental is that the home *need not* be occupied by the homeowner. Banning a class of homeowners from the STR market is therefore fundamentally unrelated to the City's sole expressed concern about STRs—the guests.

In the absence of anything in the record, and in presence of common sense, we cannot infer that ownership of an STR by natural persons through a business entity will negatively influence a neighborhood's "livability and quality of life." Nothing in the City's STR Study, or the City's briefing in the district court, identifies a plausible connection between an STR homeowner's juridical status and the behavior of STR guests. The City's attempt to explain its reasoning in this court is conclusional. Instead, the

City's 2018 STR study discusses a prohibition on "corporate ownership" only in the context of barring "out-of-state owners" and "requiring a homestead exemption," provisions that this court held unconstitutional in *Hignell-Stark I*. *See Castille*, 712 F.3d at 222 ("mere economic protection" is not a legitimate state interest). Banning non-natural person homeowners from receiving an STR permit is "so attenuated" from livability and quality-of-life concerns caused by guests as to render the distinction between business-owned and individual-owned homes arbitrary. *Stefanoff*, 154 F.3d at 526.

Although not mentioned by the City on appeal, the City Planning Commission Staff Report in response to *Hignell-Stark I* noted the City's concern for the "proliferation or over concentration of STRs in a particular neighborhood." To assuage that concern, the City intended to set "limits on the parties that can receive STR permits" by "prohibit[ing] any companies from obtaining residential STR license[s]." But preventing businesses from obtaining STR licenses has nothing to do with minimizing the proliferation of STRs in neighborhoods because the ordinances already regulate the concentration of STRs. Under the Code, only one STR permit "may be issued within each city block." Further, "[n]o person may own, in whole or in part, more than one property used" as an STR. And "[n]o person may be the operator of more than one" STR. The permitting scheme belies any alleged concern that businesses will cause the proliferation STRs to the detriment of local neighborhoods. The business-entity ban is therefore irrational. [3]

---

[3] For the same reason, the business ban does not further the City's interest articulated in the Code's legislative purpose "to seek preservation of permanent housing stock, balance economic opportunity, reduce negative effects on availability of affordable housing, [and] create a level playing field."

As to the operator restriction, nothing in the briefs or record hints at why only "natural person" operators would further the City's interest in maintaining the character of residential neighborhoods. A business holding an operator permit may satisfy the operator's oversight requirements, like being "accessible by telephone" and "resolv[ing] complaints within one hour," only through the presence of a natural person. Abstract notions of the corporate form have no bearing on effectuating the operator requirement. Again, a business entity "is simply a form of organization used by human beings to achieve desired ends." *Burwell*, 573 U.S. at 706, 134 S.Ct. at 2768.

The City offers no independent justification for the ban on business entities as STR operators. The Code's legislative purpose states the City's broad desire to "mitigate disruptive effects that unmonitored STRs can have on neighborhoods." At oral argument, the City claimed the operator requirement is intended to ensure that "someone [is at the STR] keeping order." But nothing suggests restrictions based on the legal identity of the *permitholder* will advance the City's interest in STR oversight. The regulations explicitly contemplate the hiring of third-party operators who are not the homeowner. Whether a "natural person" or a "business" receives an operator permit, both must provide the same service through an in-person presence. And both must ensure that an STR is not unmonitored. A natural person will be working as an operator either way.

In short, "there is a disconnect" between the City's concern with unmonitored STRs and its decision to prevent an entire class of entities from being licensed to operate STRs. *Castille*, 712 F.3d at 225. Without some rationale for its differentiation, we cannot find that the Code's prohibition on business-held operator permits advances the City's interest in STR oversight. *See id.* at 226.

No. 24-30160

The district court offered two additional rationales to support the ban on business entities as owners or operators. First, it held that "[i]t is reasonable to conceive that a natural person owner and/or operator would have more desire, interest, and accessibility to address neighborhood concerns arising readily and directly from STR operations within the mandated one-hour period for addressing complaints than corporate entities." As the regulations would apply equally regardless of the owner or operator, it is not rational to infer lackadaisical compliance or lack of incentive simply based on ownership status. Second, the district court held that "changes in interests, policies, ownership, or control of a corporate entity during or after the permitting process would likely have lengthy administrative, regulatory, and potential legal consequences that unnecessarily lead to overwhelming costs and fees." Whatever this means, we cannot conceive of any administrative, regulatory, or legal consequence in the record or elsewhere unique to non-natural persons that might create overwhelming costs and fees under some circumstances. This hypothetical rationale, therefore, cannot stand to support the business ban. *See Castille*, 712 F.3d at 223.

The City's ban on business-held STR licenses and permits is too attenuated to any legitimate state interest to be considered anything other than "arbitrary or irrational." *Stefanoff*, 154 F.3d 526. It must fall under the Equal Protection Clause of the Fourteenth Amendment.

## D.

Fourth, Appellants challenge two parts of the Code's advertising regulations. First, Sections 26-618(b)(1)–(4) prohibit advertisements for an "illegal," or unlicensed, STR or advertisements that would exceed the Code's restrictions on STR density, guest bedrooms, or guest occupancy. Second, Section 26-618(a)(3) requires "that each short-term rental listing

advertises only one dwelling unit" and discloses information about the STR like the owner and operator permit number and the number of available guest bedrooms.

The first group of restrictions under Sections 26-618(b)(1)–(4) does not involve protected speech because it does not concern lawful activity under the Code. The subsections prohibit "illegal" advertisements and advertisements for STRs that would exceed the "legally available" limits. No commercial speech proposing such illegal activity is protected by the First Amendment. *See Cocroft v. Graham*, 122 F.4th 176, 180 (5th Cir. 2024).

In addition, Section 26-618(a)(3), for the most part, simply requires advertising disclosures as to the owner and operator permit numbers, Americans with Disabilities Act compliance and wheelchair accessibility, the number of available guest bedrooms, and the maximum available occupancy. Such disclosure requirements do not violate the First Amendment. "[A]n advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651, 105 S.Ct. 2265, 2282 (1985). *Zauderer* applies when the compelled speech is (1) purely factual, (2) uncontroversial, (3) justified by a legitimate state interest and (4) not unduly burdensome. *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 877 (5th Cir. 2024). Here, the required disclosures are "purely factual" and "uncontroversial." *See id.* Further, the City has a "legitimate state interest" in ensuring customers only interact with legitimate STR advertisements and are fully apprised of what they are renting. *See id.* at 882–83. Finally, the required disclosures are "not unduly burdensome." *Id.* at 885–86. And they impart only "somewhat more information than [owners and operators] might otherwise be inclined to present." *Zauderer*, 471 U.S. at 650, 105 S.Ct. at 2281.

No. 24-30160

In contrast, Section 26–618(a)(3)'s requirement that each listing advertise "only one dwelling unit" violates the First Amendment. "Unlike rational-basis review, the *Central Hudson* standard does not permit [a court] to supplant the precise interests put forward by the [City] with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S.Ct. 1792, 1798 (1993). The asserted governmental interest in restricting each advertisement to only one dwelling unit must be "substantial," the regulation must "directly advance[] the governmental interest asserted," and it must not be "more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Svc. Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351 (1980). The "scope [must be] in proportion to the interest served," and the "cost . . . carefully calculated." *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 283 (5th Cir. 2024) (citations omitted), *aff'd*, 145 S.Ct. 2291, 222 L.Ed.2d 643 (2025).

The City offers no argument to justify its one-unit-per-advertisement restriction. It only mentions the City's general interest "in protecting guests and ensuring properties listed are properly licensed and operating within their permits." (citing district court opinion; *see also* City's Motion for Summary Judgment). Accordingly, the City does not attempt to explain how the regulation "directly advances" any "governmental interest." *Cent. Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351. Because we cannot "supplant the precise justifications put forward by the [City]" and rationalize its regulation with "mere speculation or conjecture," Section 26-618(a)(3)'s requirement that "each short-term rental listing advertises only one dwelling unit" lacks the justification necessary to survive First Amendment scrutiny. *Edenfield*, 507 U.S. at 768, 770, 113 S.Ct. at 198.

No. 24-30160

E.

Fifth, Appellants assert that because the Code requires an STR operator to "reside[] on the premises being operated as a short-term rental," Section 26-619 and Section 26-620(a)(1)(e), it violates the dormant Commerce Clause. This court previously held that the City's owner-residency requirement violated the dormant Commerce Clause when it required an STR to be "located on the same lot of record as the owner's primary residence." *Hignell-Stark I,* 46 F.4th at 326.

The Code places two requirements on operators. First, to be eligible for an STR operator permit, Section 26-619 of the Code currently requires

> evidence of recorded ownership or a current residential lease, as well as at least two other forms of documentation with a matching address, including without limitation a utility bill, driver's license or state ID, or bank or credit card statement, establishing that the operator resides on the premises being operated as a short-term rental.

Second, Section 26-620(a)(1)(e) of the Code further states that "[t]he operator shall . . . [r]eside on the property being used for a non-commercial short-term rental." "Failure to reside on the premises as required by law" is unlawful.

The parties dispute the meaning of these provisions. Appellants argue that the Code creates a permanent residency requirement. The City insists, however, that "[n]othing in the ordinance requires the permanence suggested by Appellants." The City defends the district-court opinion, which found that "the operator is not required to be a permanent resident of the City, but only a temporary resident of the STR they are hired to operate during stays by STR guests." Further, the City averred during oral argument that the Code "doesn't require a residency, it just requires that an operator, an employee, somebody be present, sort of like if you had a hotel, and you

18

had somebody at the front desk, that's there to like answer questions or direct people or to take care of things."

"Federal courts must accept a reasonable narrowing construction of a state law to preserve its constitutionality." *City of El Cenizo v. Texas*, 890 F.3d 164, 182 (5th Cir. 2018). As the Supreme Court has explained, "[t]he canon of constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296, 138 S.Ct. 830, 842 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)). Louisiana, it appears, is even more open to accepting a narrowing interpretation. It holds that "a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation." *State v. Interiano*, 868 S.2d 9, 13 (La. 2004).

The operator provisions of the City Code are "readily susceptible" to the City's construction. We therefore accept the City's interpretation and its judicial admission that the Code does *not* require an operator to reside at the property permanently but rather only requires an operator be present at the property while guests are present. While both Sections 26-619 and 26-620(a)(1)(e) use the term "reside," they require an individual to reside at the property "being operated as a short-term rental" or "being used for a non-commercial short-term rental." There are two potential interpretations of this language. First, the relevant property could be "used for" or "operated as" a short-term rental when it is permitted for an STR, and therefore, an operator must reside at the property year-round regardless of guest occupancy. Alternatively, the relevant property could be "used for" or "operated as" a short-term rental only *as it is being used* as an STR and therefore only when guests are present. The first interpretation would implicate the dormant Commerce Clause because such a requirement would

discriminate against out-of-state individuals who want to work as operators wholly separate from any guest-oversight function they must provide.  *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369, 143 S.Ct. 1142, 1152 (2023).

Appellants contend that the Code's requirements "exclude operators who wish to maintain residence out-of-state—or even in other homes locally—but work as STR operators while in New Orleans."  By the City's own interpretation, however, the Code merely requires individuals to work as STR operators while the home is occupied.  This interpretation makes sense in light of an operator's prescribed duties.  Because the Code's language is "readily susceptible" of the City's interpretation, we conclude that the Code's language requires that an operator reside on the STR property only while it is actively occupied by guests.  By virtue of this interpretation, there is no discrimination against out-of-state STR operators, and Appellants' dormant Commerce Clause argument necessarily fails.

## IV.

The judgment of the district court is AFFIRMED in part; REVERSED in part specifically as to (1) §§ 26-617(a)'s and 26-619(a)'s prohibition on  owner or operator permits to business entities and (2) § 26-618(a)(3)'s requirement that each advertisement for an STR list only one dwelling unit; and REMANDED for further proceedings.